**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| BRITISH TELECOMMUNICATIONS PLC AND BT AMERICAS, INC., | ) ) ) | |
| Plaintiffs, | ) ) ) | C.A. No. 22-01538-CJB |
| v. | ) ) | **JURY TRIAL DEMANDED** |
| PALO ALTO NETWORKS, INC., | ) ) | |
| Defendant. | ) | |

**PLAINTIFFS BRITISH TELECOMMUNICATIONS PLC'S AND BT AMERICAS, INC.'S CONSOLIDATED BRIEF IN OPPOSITION TO DEFENDANT PALO ALTO NETWORKS, INC.'S MOTION TO TRANSFER VENUE AND IN SUPPORT OF PLAINTIFFS' ALTERNATIVE MOTION FOR STAY OF A DECISION PENDING <u>VENUE-RELATED DISCOVERY AND SUPPLEMENTAL BRIEFING</u>**

OF COUNSEL:

Bart H. Williams
PROSKAUER ROSE LLP
2029 Century Park East, Suite 2400
Los Angeles, California 90067
310-557-2900
bwilliams@proskauer.com

Baldassare Vinti
Nolan M. Goldberg
PROSKAUER ROSE LLP
Eleven Times Square
New York, New York 10036
212-969-3000
bvinti@proskauer.com
ngoldberg@proskauer.com

Edward Wang
PROSKAUER ROSE LLP
1001 Pennsylvania Avenue NW, Suite 600
Washington, DC 20004
202-416-6800
ewang@proskauer.com

Dated: March 20, 2023

Philip A. Rovner (#3215)
Jonathan A. Choa (#5319)
POTTER ANDERSON & CORROON LLP
Hercules Plaza
P.O. Box 951
Wilmington, DE 19899
(302) 984-6000
provner@potteranderson.com
jchoa@potteranderson.com

*Attorneys for Plaintiff*
*British Telecommunications plc*
*and BT Americas, Inc.*

# TABLE OF CONTENTS

<u>**Page**</u>

I.      PRELIMINARY STATEMENT ................................................................ 1

II.     NATURE AND STAGE OF PROCEEDINGS ..................................... 3

III.    BACKGROUND ..................................................................................... 3

    A.      THE PATENTS-IN-SUIT HAVE STRONG DELAWARE TIES ........ 3

    B.      THE PARTIES' STRONG DELAWARE TIES ................................. 4

IV.     ARGUMENT .......................................................................................... 6

    A.      LEGAL STANDARD ............................................................................ 6

    B.      THE PRIVATE INTEREST FACTORS WEIGH AGAINST TRANSFER .......... 7

        1.      Factor 1: BT's Decision to File in Delaware Should Not be Lightly Disturbed .................................................................................... 7

        2.      Factor 2: PAN's Preference for the Northern District of California Is Entitled to Minimal Weight, If Any ........................................... 10

        3.      Factor 3: PAN Infringed BT's Patent in Delaware .................... 11

        4.      Factor 4: Delaware is a Convenient Forum for Both Parties ..... 12

        5.      Factor 5: No Witnesses Would Be Unavailable in Delaware ..... 15

        6.      Factor 6: The Parties Agree the Books and Records Location Factor is Neutral ................................................................................. 16

    C.      THE PUBLIC INTEREST FACTORS WEIGH AGAINST TRANSFER .......... 16

        1.      Factor 7: The Enforceability of Judgment Factor Weighs Against Transfer 16

        2.      Factor 8: Litigation in Delaware Will be More Efficient than in the Northern District of California ....................................................... 17

        3.      Factor 9: There is No Meaningful Difference in Case Administration Between the Two Fora .................................................................. 18

        4.      Factor 10: The Parties Agree the Local Interest Factor is Neutral ............. 18

        5.      Factor 11: Delaware Public Policy Supports Delaware Corporations Using Delaware as a Dispute Resolution Forum ................................. 19

        6.      Factor 12: The Parties Agree that the Familiarity of the Trial Judges with the Applicable State Law in Diversity Cases Is a Neutral Factor ....... 19

    D.      THE *JUMARA* FACTORS WEIGH STRONGLY AGAINST TRANSFER ....... 19

    E.      IN THE ALTERNATIVE, THE COURT SHOULD STAY ITS DECISION TO ALLOW VENUE-RELATED DISCOVERY AND FURTHER BRIEFING ...... 20

V.      CONCLUSION ..................................................................................... 20

## **TABLE OF AUTHORITIES**

**Page(s)**

CASES

*AIP Acquisition LLC v. iBasis, Inc.*,
   No. 12-cv-616, 2012 WL 5199118 (D. Del. Oct. 19, 2012)...............................................13, 17

*Bonutti Skeletal Innovations LLC v. Conformis, Inc.*,
   No. 12-cv-1109, 2013 WL 6040377 (D. Del. Nov. 14, 2013)................................................11

*Bristol-Myers Squibb Co. v. Merck & Co.*,
   No. 14-cv-1131, 2015 WL 13683600 (D. Del. Apr. 29, 2015) ..............................................15

*Brit. Telecomms. Plc & BT Ams., Inc. v. Fortinet, Inc.*,
   No. 18-cv-1018, 2021 WL 3418067 (D. Del. Aug. 5, 2021)...........................................3, 9, 17

*Cellectis S.A. v. Precision Biosciences, Inc.*,
   858 F. Supp. 2d 376 (D. Del. 2012)...................................................................................11

*Elm 3DS Innovations LLC v. SK Hynix Inc.*,
   No. 14-cv-1432, 2015 WL 4967139 (D. Del. Aug. 20, 2015)..............................13, 15, 17, 18

*Fink v. Wilmington Tr., N.A.*,
   473 F. Supp. 3d 366 (D. Del. 2020).................................................................................20

*In re Altera Corp.*,
   494 F. App'x 52 (Fed. Cir. 2012) ........................................................................................8

*In re Link_A_Media Devices Corp.*,
   662 F.3d 1221 (Fed. Cir. 2011)...........................................................................................9

*Intell. Ventures I LLC v. Altera Corp.*,
   842 F. Supp. 2d 744 (D. Del. 2012)....................................................................................9

*Jones Pharma, Inc. v. KV Pharm. Co.*,
   No. 03-cv-786, 2004 WL 323109 (D. Del. Feb. 17, 2004)...................................................13

*Jumara v. State Farm Ins. Co.*,
   55 F.3d 873 (3d Cir. 1995)......................................................................................6, 15, 17

*Kroy IP Holdings, LLC v. Groupon, Inc.*,
   No. 17-cv-1405, 2018 WL 4905595 (D. Del. Oct. 9, 2018),
   *reports and recommendations adopted*, No. 17-cv-1405, 2018 WL 5724013
   (D. Del. Nov. 1, 2018), No. 17-cv-1405, 2018 WL 6499675 (D. Del. Dec. 10,
   2018). ......................................................................................................................13, 18, 19

*McDonnell Douglas Corp. v. Polin*,
   429 F.2d 30 (3d Cir. 1970)......................................................................................20

*Mitek Sys., Inc. v. United Servs. Auto. Ass'n*,
   No. 12-cv-462, 2012 WL 3777423 (D. Del. Aug. 30, 2012)..................................6, 7

*P Tech, LLC v. Arthrex, Inc.*,
   No. 21-cv-968, 2022 WL 1490733 (D. Del. May 11, 2022) ......................................19

*Pers. Audio, LLC v. Google LLC*,
   No. 17-cv-1751, 2018 WL 11474418 (D. Del. Sept. 19, 2018)..............................7, 8

*Personalized User Model LLP v. Google, Inc.*,
   No. 09-cv-525, 2009 WL 3460767 (D. Del. Oct. 27, 2009).............................11, 14

*Pragmatus AV, LLC v. Yahoo! Inc.*,
   No. 11-cv-902, 2012 WL 4889438 (D. Del. Oct. 15, 2012),
   *report and recommendation adopted*, No. 11-cv-902, 2013 WL 174499 (D.
   Del. Jan. 16, 2013) ........................................................................................ *passim*

*Praxair, Inc. v. ATMI, Inc.*,
   No. 03-cv-1158, 2004 WL 883395 (D. Del. Apr. 20, 2004) ....................................9

*Realtime Data LLC v. Egnyte, Inc.*,
   No. 17-cv-1750, 2018 WL 5724040 (D. Del. Nov. 1, 2018).....................................9

*Realtime Data LLC v. Fortinet, Inc.*,
   No. 17-cv-1635, 2018 WL 5630587 (D. Del. Oct. 31, 2018)..................................10

*Rosebud LMS, Inc. v. Salesforce.com, Inc.*,
   No. 17-cv-1712, 2018 WL 6061343 (D. Del. Nov. 20, 2018)...........................10, 15

*Shure Inc. v. ClearOne, Inc.*,
   No. 19-cv-1343, 2020 WL 3250176 (D. Del. Apr. 15, 2020) .........................7, 8, 10

*Shutte v. Armco Steel Corp.*,
   431 F.2d 22 (3d Cir. 1970)....................................................................................7, 19

*Sprint Commc'ns, L.P. v. Cox Commc'ns, Inc.*,
   896 F. Supp. 2d 1049 (D. Kan. 2012) ...................................................................16

*Stephenson v. Game Show Network, LLC*,
   933 F. Supp. 2d 674 (D. Del. 2013)..................................................................10, 11

*TC Heartland LLC v. Kraft Foods Grp. Brands LLC*,
   581 U.S. 258 (2017)...................................................................................................7

*Tessera, Inc. v. Broadcom Corp.*,
  No. 16-cv-379, 2017 WL 1065865 (D. Del. Mar. 21, 2017) ................................... 7, 8, 17, 20

*Trilegiant Loyalty Sols., Inc. v. Maritz, Inc.*,
  No. 04-cv-360, 2005 WL 441077 (D. Del. Feb. 15, 2005) .................................................... 16

*ZapFraud, Inc. v. FireEye, Inc.*,
  No. 19-cv-1688, 2020 WL 4336058 (D. Del. July 28, 2020) ........................................... 13, 19

**STATUTES**

35 U.S.C. § 271(a) ........................................................................................................................ 11

**OTHER AUTHORITIES**

*Annual Report of the United States District Court for the District of Delaware to
  the Federal Bar Association 2021*,
  https://www.ded.uscourts.gov/sites/ded/files/news/District%20of%20Delaware%20Annual%20Report%202021.pdf (last visited Mar. 17, 2023) ......................................... 8

D. Del. LR 7.1.3(c)(2) .................................................................................................................. 15

*United States District Courts – National Judicial Caseload Profile*,
  https://www.uscourts.gov/sites/default/files/fcms_na_distprofile0630.2022_0.pdf (last visited Mar. 17, 2023) .................................................................................................. 18

## I.   **PRELIMINARY STATEMENT**

Defendant Palo Alto Networks, Inc. ("PAN") cannot meet its "heavy" burden of justifying a transfer to its preferred forum, the Northern District of California, especially after having intentionally availed itself of the rights, benefits, and obligations of Delaware law as discussed below.  The undisputed facts fully support keeping this case in Delaware.

Plaintiffs BT Americas, Inc. ("BT Americas") and British Telecommunications plc ("BT plc") (together, "BT") have strong ties to Delaware, where BT Americas was incorporated over 40 years ago.  This District is the *only* jurisdiction in which BT has brought federal cases for over a decade.  Indeed, the two Patents-in-Suit at issue in this case were recently litigated *in this Court* in *British Telecommunications Plc & BT Americas, Inc. v. Fortinet, Inc.*, No. 18-cv-1018 (D. Del., filed July 10, 2018) (the "Fortinet Litigation").  Further, the Patents-in-Suit have always been owned by a Delaware corporation: their original owner was a Delaware company; it merged into a BT affiliate that was a Delaware company; and that affiliate was then merged into BT Americas, a Delaware company.  Former employees of the original owner of the Patents-in-Suit, who still work for BT Americas, reside on the East Coast.  These and other reasons discussed below more than warrant a denial of PAN's motion.

And, most recently, BT briefed its Opposition (D.I. 19) to PAN's co-pending Motion to Dismiss using Delaware case law (including from this Court) and relying heavily on this District's prior construction of the Patents-in-Suit in the Fortinet Litigation.  BT would be prejudiced if the case was transferred, and it needed to re-brief using different law where the prior claim construction might be given less weight.  This prejudice is particularly relevant as it would be directly caused by PAN's decision to file its Motion to Dismiss in this district rather than seeking a stay pending the resolution of the present motion.

Like BT, PAN has litigated patent infringement cases here before. In two previous patent

infringement cases filed against PAN in Delaware, PAN did not seek to transfer either case out of this District. On the contrary, several years ago, *PAN stipulated to transfer one of those cases to this District*. Given this, the inescapable conclusion is that PAN is now seeking to have this particular case transferred to avoid this District's prior claim construction of the Patents-in-Suit—a construction which leaves no doubt that PAN infringes the Patents-in-Suit.

Indeed, PAN has many Delaware ties beyond litigating here. PAN was incorporated here. It advertises and sells the accused products—*i.e.*, infringes BT's patents—here (and nationally). PAN includes provisions in its compensation plans mandating *exclusive* Delaware jurisdiction and the application of Delaware law. PAN is hiring for a position here. In short, PAN is no stranger to Delaware; it is a citizen and frequent visitor. And as a global business worth billions of dollars, PAN cannot show it would suffer any undue burden litigating in this District. Having availed itself of the rights, benefits, and obligations of Delaware law, PAN cannot credibly argue that it is inconvenient for it to litigate in this District.

Moreover, PAN identifies no witness, party or otherwise, who would be unavailable for trial in this District. PAN's bellyaching that it prefers to litigate in California, where *some* of its employees are located, completely ignores that Delaware is far more convenient for BT and its witnesses and that Delaware is the chosen forum, by way of incorporation, of both the owner of the Patents-in-Suit and PAN itself. Indeed, rather than move to stay pending a decision on this motion, PAN chose to move to dismiss, purposefully availing itself of this Court. D.I. 11.

Public interest also weighs against transfer because the parties are briefing PAN's Motion to Dismiss in this Court, the Patents-in-Suit were construed in this District after years of litigation, this dispute involves a patent owner and defendant who are Delaware corporations, and all parties have availed themselves, in many ways, of the rights, benefits and obligations of Delaware law.

Ultimately, the *Jumara* factors stack up insurmountably against transfer. Only a single factor (PAN's preferred forum) even arguably supports transfer, and it is more than negated by BT's choice of this District, where the Patents-in-Suit have been previously litigated. All remaining factors weigh against transfer or are neutral. PAN simply cannot meet its "heavy" burden of showing these factors, on balance, "strongly" support transfer. The Court should therefore deny PAN's motion.

Should the Court not be inclined to deny PAN's motion based on the present record, BT respectfully asks the Court to stay its decision and allow the parties to conduct venue-related discovery followed by supplemental briefing.

## II.   <u>NATURE AND STAGE OF PROCEEDINGS</u>

This case was initially assigned to Chief Judge Connolly, who previously presided over the Fortinet Litigation, in which he construed both Patents-in-Suit in a manner that leaves no doubt PAN infringes. *See Brit. Telecomms. Plc & BT Ams., Inc. v. Fortinet, Inc.*, No. 18-cv-1018, 2021 WL 3418067 (D. Del. Aug. 5, 2021). This case was then referred to Your Honor with consent of the parties. D.I. 10. On February 2, 2023, PAN moved to dismiss the complaint (D.I. 11) and concurrently moved to transfer venue (D.I. 13).

## III.   <u>BACKGROUND</u>

### A.  THE PATENTS-IN-SUIT HAVE STRONG DELAWARE TIES

In 1999, Dr. Bruce Schneier was struck by the inadequacies of existing security solutions. Complaint ¶ 31, D.I. 1. He formed a Delaware corporation, Counterpane Internet Security, Inc. ("Counterpane"), to solve these issues and, with his employees Jon Callas and Andrew Gross, invented and patented the technology described in U.S. Patent Nos. 7,159,237 and 7,895,641 ("Patents-in-Suit"). *Id.* ¶¶ 31-38. In 2006, Counterpane was merged into BT Counterpane Internet Security, Inc. ("BT Counterpane"), another Delaware corporation, bringing the Patents-in-Suit

with it. *See* Exs. 1-2.[1]  Then in 2011, BT Counterpane merged into and assigned the Patents-in-Suit to BT Americas, also a Delaware Corporation.  *See* Exs. 3-4.  Since then, the Patents-in-Suit have been litigated and the claims construed in this District.  *See* Fortinet Litigation.

### B.  THE PARTIES' STRONG DELAWARE TIES

As a Delaware corporation, BT Americas regularly litigates in this District, as does BT plc.[2]  Over the last decade, both BT Americas and BT plc have brought their federal cases exclusively in this District.  Declaration of Peter Ratcliffe ("Ratcliffe Decl.") ¶ 2.  As a result, BT experiences benefits and efficiencies in litigating in this District, including that it has established local counsel here and is familiar with estimating the costs and timing of litigation here.  *Id.* ¶ 3.  BT also has an office in the East Coast that supports litigation in Delaware.  *Id.* ¶¶ 3, 4, 6.

PAN is also a Delaware corporation that litigates in Delaware.  In fact, it stipulated to transferring a different patent infringement case to the District of Delaware because it was "a more convenient venue."  *See* Ex. 5, *Selective Signals, LLC v. Palo Alto Networks, Inc.*, No. 6:17-cv-65, ¶ 5 (E.D. Tex. Sep. 22, 2017).  It has also selected Delaware as the exclusive jurisdiction and governing law for its Equity Incentive Plan (Ex. 6 § 4(g)), as well as the governing law for its Deferred Compensation Plan (Ex. 7 § 12.9).  Furthermore, PAN relies on its Delaware Certificate of Incorporation and Delaware law to "discourage takeovers" and "encourage persons seeking to acquire control of [PAN] to negotiate first with [its] board of directors."  Ex. 8.

PAN claims to have no offices in Delaware, but it hires here.  PAN has a job posting seeking a Systems Engineer in Wilmington.  Ex. 9.  Over a quarter of PAN's current openings are

---

[1] Cites to "Ex." refer to the exhibits to the Declaration of Edward Wang.

[2] *See* Fortinet Litigation. *See also Brit. Telecomms. plc v. Coxcom Inc.*, No. 10-cv-658 (D. Del., filed Aug. 5, 2010); *Valyrian IP LLC v. BT Ams., Inc.*, No. 22-cv-698 (D. Del., filed May 27, 2022); *Paradise IP LLC v. BT Ams., Inc.*, No. 21-cv-1096 (D. Del., filed July 29, 2021); *Relay IP, Inc. v. BT Grp. plc & BT Ams., Inc.*, No. 13-cv-771 (D. Del., filed May 3, 2013).

for remote positions.  Exs. 10A, 10B.  For example, PAN has an expired posting for a remote Technical Solutions Specialist position in Delaware.  Ex. 11.

PAN advertises and sells the accused products in Delaware, and partners with and certifies other companies that operate in Delaware to sell the accused products directly to Delaware residents.  For example, as shown on PAN's website (Ex. 12), which BT has cropped and annotated below, Sun Management is a PAN certified partner that delivers the accused products to the Mid-Atlantic region (which includes Delaware), with 23 unique customers in the last year.  *Id*.



Sun Management, which operates in Delaware (Ex. 13), describes itself as a "Palo Alto Networks Partner, Palo Alto Networks Certified Services Partner, and Palo Alto Networks Authorized Training Center" whose "[e]ngineers have designed and installed over $100M in Palo Alto Firewall Security since 2009" (Ex. 14).[3]

PAN also provides a "Global Cloud Infrastructure" for at least Prisma Access.  Ex. 16. These physical servers, through which PAN infringes, are placed throughout the country, and

---

[3] BT believes PAN has many more infringing customers in Delaware, a subject ripe for venue-related discovery from both PAN and its customers should the Court decline to deny this motion based on the present record.  For example, the University of Delaware offers PAN's "GlobalProtect" VPN to its thousands of students, faculty, and staff.  Ex. 15.  We cannot determine whether the University of Delaware installation potentially infringes (nor the identity of other specific infringing Delaware customers), but this is one area we would want discovery if the Court believes that is necessary.

divided into local regions like U.S. East and U.S. Northeast. *See id.* Thus, no matter where PAN designed the accused products, it implements them and infringes nationally, including in Delaware.

## IV.  <u>ARGUMENT</u>

### A.  LEGAL STANDARD

On a motion to transfer under 28 U.S.C. § 1404, courts in this Circuit consider a mix of private and public interest factors, including (1) the plaintiff's forum preference as manifested in the original choice, (2) the defendant's preference, (3) whether the claim arose elsewhere, (4) the convenience of the parties as indicated by their relative physical and financial condition, (5) the convenience of the witnesses—*but only to the extent that the witnesses may actually be unavailable for trial in one of the fora*[4], (6) the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum), (7) the enforceability of the judgment, (8) practical considerations that could make the trial easy, expeditious, or inexpensive, (9) the relative administrative difficulty in the two fora resulting from court congestion, (10) the local interest in deciding local controversies at home, (11) the public policies of the fora, and (12) the familiarity of the trial judge with the applicable state law in diversity cases. *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995).

Because these factors weigh against transfer, PAN tries to lower the bar by reframing the standard as "whether transfer would *best serve* the convenience of the parties and witnesses as well as the interests of justice." Mot. at 6, D.I. 14 (emphasis added) (citing *Mitek Sys., Inc. v. United Servs. Auto. Ass'n*, No. 12-cv-462, 2012 WL 3777423, at *4 (D. Del. Aug. 30, 2012)). This suggests PAN could prevail merely by showing the Northern District of California is more

---

[4] PAN ignores the italicized component of the witness convenience factor. *See*, *infra*, Section IV.B(5).

convenient than Delaware. That, of course, is not the law.[5] In the Third Circuit, transfer is appropriate only if "the balance of convenience of the parties is *strongly in favor* of [the] defendant." *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d Cir. 1970) (emphasis added) (citation omitted). Otherwise, the "plaintiff's choice of forum should prevail." *Id.* (citation omitted). This means a defendant seeking transfer cannot merely show the scales tip in its favor but must show they tip *decidedly* in its favor. That is a "heavy" burden few defendants can meet.[6] PAN is no exception; it fails to show that the *Jumara* factors decidedly favor transfer.

## B. THE PRIVATE INTEREST FACTORS WEIGH AGAINST TRANSFER

### 1. Factor 1: BT's Decision to File in Delaware Should Not be Lightly Disturbed

"It is black letter law that a plaintiff's choice of a proper forum is a paramount consideration in any determination of a transfer request" brought under § 1404(a), and that this choice "should not be lightly disturbed." *Id.* (citation omitted). PAN does not dispute Delaware is a proper forum for this action, nor could it. *See TC Heartland LLC v. Kraft Foods Grp. Brands LLC*, 581 U.S. 258, 264 (2017) (venue is proper in the district in which an alleged patent infringer is incorporated).

This Court has stated that, for this factor to weigh against transfer, the plaintiff must "articulate[] rational and legitimate reasons for filing in this District." *Shure*, 2020 WL 3250176, at *3. BT has strong reasons for suing in Delaware.

First, BT Americas, the owner of the Patents-in-Suit, is a Delaware company. "This Court has repeatedly found a plaintiff's incorporation in Delaware to be a legitimate reason for filing suit

---

[5] Nor is that what *Mitek* held. Nowhere did *Mitek* adopt a "best serve" approach; it followed Third Circuit precedent and assessed whether transfer was "strongly favor[ed]." *Mitek Sys., Inc.*, 2012 WL 3777423, at *8.

[6] *See, e.g.*, *Shure Inc. v. ClearOne, Inc.*, No. 19-cv-1343, 2020 WL 3250176, at *2 (D. Del. Apr. 15, 2020); *Tessera, Inc. v. Broadcom Corp.*, No. 16-cv-379, 2017 WL 1065865, at *3 (D. Del. Mar. 21, 2017); *Pers. Audio, LLC v. Google LLC*, No. 17-cv-1751, 2018 WL 11474418, at *3 (D. Del. Sept. 19, 2018).

in this District." *Tessera*, 2017 WL 1065865, at *4. "In such circumstances, a plaintiff has publicly availed itself of the benefits and consequences of this State's laws, and it makes sense that it would thus wish to later utilize courts located within that State when pursuing a litigation matter." *Id*. Reflecting this, for over a decade both BT Americas and BT plc have brought their federal cases exclusively in this District.  Ratcliffe Decl. ¶ 3.  As a result, BT's internal processes and knowledge are geared toward filing, maintaining, and supporting litigation in Delaware.  *Id.* ¶¶ 3-4, 6.

Second, PAN is also incorporated in Delaware.  "This Court has repeatedly found that it is rational and legitimate for a plaintiff to prefer to maintain a suit against a defendant in its state of incorporation or organization—a district where a plaintiff can have certainty that there will be personal jurisdiction over that defendant." *Pers. Audio, LLC*, 2018 WL 11474418, at *5.  *See also Pragmatus AV, LLC v. Yahoo! Inc.*, No. 11-cv-902, 2012 WL 4889438, at *7 (D. Del. Oct. 15, 2012) ("[T]he fact of Defendant's incorporation in Delaware can have real resonance in the *Jumara* 'balance of convenience' analysis," despite its principal place of business in California (citations omitted)), *report and recommendation adopted*, No. 11-cv-902, 2013 WL 174499 (D. Del. Jan. 16, 2013); *In re Altera Corp.*, 494 F. App'x 52, 53 (Fed. Cir. 2012) (affirming denial of motion to transfer because, "not only was Delaware the respondents' 'home' venue, but all of the parties had availed themselves to 'rights, benefits, and obligations that Delaware law affords by incorporating in that state.'").  Also, as explained below in Section IV.C(1), litigating in Delaware assures there is personal jurisdiction over PAN's subsidiaries incorporated in Delaware.

Third, this District is a logical and practical venue for this patent infringement case.  This District has "significant experience with patent litigation matters," which is "an understandable reason for filing here." *Shure*, 2020 WL 3250176, at *4.[7]

---

[7] *See Annual Report of the United States District Court for the District of Delaware to the*

Importantly, the Patents-in-Suit have already been litigated in this District, during which the claims of both Patents-in-Suit were construed—a construction that leaves no doubt PAN infringes. *Brit. Telecomms. Plc*, 2021 WL 3418067.  Thus, BT had plenty of strong reasons to sue in Delaware, and its selection of this proper and rational forum weighs heavily against transfer.

In fact, PAN does not dispute this factor weighs in BT's favor.  Mot. at 8.  Instead, PAN argues this factor is less important because Delaware is not BT's "home forum."  *Id.* at 7.  That is wrong on two levels.  First, BT Americas, the sole owner of the Patents-in-Suit and for whom the inventors worked, is incorporated in Delaware, so Delaware *is* its "home turf."  *See, e.g.*, *Intell. Ventures I LLC v. Altera Corp.*, 842 F. Supp. 2d 744, 754 (D. Del. 2012) ("The Court agrees with those cases that include a corporate entity's state of incorporation as part of its 'home turf.'"); *Praxair, Inc. v. ATMI, Inc.*, No. 03-cv-1158, 2004 WL 883395, at *2 (D. Del. Apr. 20, 2004) (holding that Delaware was plaintiff's "home turf" even though its principal place of business was in Connecticut).[8]

Second, PAN's reliance on *In re Link_A_Media Devices Corp.*, 662 F.3d 1221 (Fed. Cir. 2011) is misplaced.  In dicta, the court stated that a foreign plaintiff organized under Bermuda law was entitled to less deference in its forum selection.  *Id.* at 1223.  But the court did not hold that less deference should be given to a *U.S. company*'s—such as BT America's—choice to bring suit where it is incorporated.  *See Realtime Data LLC v. Egnyte, Inc.*, No. 17-cv-1750, 2018 WL 5724040, at *3 (D. Del. Nov. 1, 2018) ("Because . . . concerns about foreign law and comparative

_____

*Federal Bar Association 2021*, https://www.ded.uscourts.gov/sites/ded/files/news/District%20of%20Delaware%20Annual%20Report%202021.pdf, at 11 (last visited Mar. 17, 2023) (210 average patent cases per judgeship from 2011-2020 in Delaware versus 18 per judgeship in the Northern District of California).

[8] PAN focuses on BT plc's foreign status, but BT Americas owns the Patents-in-Suit, not BT plc.  BT plc is a co-plaintiff because it was involved in pre-suit communications with PAN.

law issues are not implicated by a § 1404(a) transfer motion in a patent case filed by a domestic plaintiff, I understand *Link_A_Media* to say that a plaintiff's forum choice in a patent case merits 'less deference' for § 1404(a) purposes *only if the plaintiff does not reside in the United States*." (emphasis added)); *Rosebud LMS, Inc. v. Salesforce.com, Inc.*, No. 17-cv-1712, 2018 WL 6061343, at *3 (D. Del. Nov. 20, 2018) (same).  Indeed, this Court has rejected PAN's argument, explaining that the plaintiff's "home turf" "has no independent significance in the *Jumara* transfer analysis." *Shure*, 2020 WL 3250176, at *4 n.4.  Thus, BT's forum choice is entitled to "paramount consideration in balancing the *Jumara* factors." *Realtime Data LLC v. Fortinet, Inc.*, No. 17-cv-1635, 2018 WL 5630587, at *6 (D. Del. Oct. 31, 2018).

For all these reasons, BT's selection of Delaware weighs strongly against transfer.

### 2. Factor 2: PAN's Preference for the Northern District of California Is Entitled to Minimal Weight, If Any

PAN fails to establish that its forum preference is entitled to any meaningful weight.  While PAN's principal place of business is in California, it has been a Delaware corporation since 2005. Mot. at 1.  PAN contends that "[t]he bulk of the relevant evidence for this case is also in the Northern District of California" (*id.* at 9), but elsewhere concedes it "is not presently aware of any evidence that it could not produce in either forum" (*id.* at 13), so the existence of evidence in California does not remotely favor transfer there.  That leaves PAN's contention that "most" of its anticipated party witnesses work and reside in California, while "some" work and reside in Israel. *Id.* at 9.[9]  At best, this vague assertion about California-based potential PAN witnesses thinly favors transfer to the Northern District of California.  *See, e.g.*, *Stephenson v. Game Show Network, LLC*, 933 F. Supp. 2d 674, 678 (D. Del. 2013) ("The court declines to elevate defendants' convenience

---

[9] While BT has limited insight at this point into the locations of PAN's employees, it appears that only 64 of the 434 positions PAN is hiring are in California. Ex. 17.

over the choice of a neutral forum selected by both defendants as the situs of their incorporation.").

### 3.   Factor 3: PAN Infringed BT's Patent in Delaware

Infringement arises "wherever someone has committed acts of infringement, to wit, 'makes, uses, offers to sell, or sells any patented invention' without authority." *Cellectis S.A. v. Precision Biosciences, Inc.*, 858 F. Supp. 2d 376, 381 (D. Del. 2012) (quoting 35 U.S.C. § 271(a)). PAN relies heavily on its creation of some accused products in California (with others created in Israel) (Mot. at 10), but a defendant's argument that it made its products in its preferred forum "loses force when the product is not a physical product." *Stephenson*, 933 F. Supp. 2d at 679.

If the defendant "offers to sell or sells any of its allegedly infringing products in Delaware . . . , the patent claims at issue can be said to have arisen in Delaware." *Cellectis*, 858 F. Supp. 2d at 381.   And if "the defendant in a patent infringement action operates on a national level, the infringement can be viewed as occurring in all districts." *Bonutti Skeletal Innovations LLC v. Conformis, Inc.*, No. 12-cv-1109, 2013 WL 6040377, at *2 n.7 (D. Del. Nov. 14, 2013) (denying motion to transfer to the District of Massachusetts, where defendant's corporate headquarters were located and where it developed, manufactured, and assembled the accused products, because the "operations and the sales of the accused products [were] national in scope.").   *See also Personalized User Model LLP v. Google, Inc.*, No. 09-cv-525, 2009 WL 3460767, at *2 (D. Del. Oct. 27, 2009) ("Because of the national scope of the technology in question, the Court finds that Plaintiff's claim arose in Delaware to the same extent as in any other district.").

PAN's infringement of the accused products—which are operated and used over the internet—is national in scope and includes infringement in Delaware.   Reflecting that it uses the accused products nationally, PAN's own website touts its "Global Cloud Infrastructure" that it "deliver[s] locally," including through clouds located in "United States – East" and "United States – North East."   Ex. 16.   PAN is hiring employees across the country, confirming that its business—

and its infringement of the patents—is national in scope.  *See supra* n.9.  Indeed, among those positions was a systems engineer role for healthcare accounts in Wilmington.  Ex. 11.

And PAN sells the accused products nationally.  Ex. 18 ("Our Customers Succeed Around the World"); Ex. 19 (listing dozens of PAN customers around the country and the world).  PAN also sells through regional partners like Sun Management, which operates and maintains the infringing products, such as Strata and Prisma Access, in Delaware (*see* Exs. 12-14).  Therefore, on information and belief, PAN sells infringing products in Delaware and the use of those products and services in Delaware represents additional acts of infringement.  BT believes PAN has many infringing customers in Delaware, a subject ripe for venue-related discovery if needed.  Because PAN uses, offers for sale, and sells the accused products in Delaware (and also induces infringement here), this factor weighs against transfer.

### 4.  Factor 4: Delaware is a Convenient Forum for Both Parties

PAN asserts without support that California would be a more convenient forum *for BT*. Mot at 11.  That is false.  This forum would be more convenient for BT given (1) the locations of its employee witnesses, including former employees of Counterpane (the former owner of the Patents-in-Suit) who reside on the East Coast and work for BT Americas, and who are familiar with the history of Counterpane's patented product (Ex. 21; Ratcliffe Decl. ¶ 5); (2), the location of the lead inventor in Massachusetts (Mot. at 4); (3) the location of BT's in-house counsel in London (Ratcliffe Decl. ¶ 6); (4) BT's familiarity with this Court and its law from prior patent infringement actions BT has litigated here (*id*. ¶ 3); (5) BT's New York office, which supports its litigations in Delaware (*id*. ¶¶ 3-4, 6); and (6) this Court's familiarity with and rulings about, and in particular claim construction of, the Patents-in-Suit from the Fortinet Litigation which was litigated in this District for over three years.

PAN also argues that its "potential party witnesses, documents, and records are

predominately located in California," so litigating there would "cause less disruption to PAN and its witnesses." Mot. at 11. But that regurgitation of Factor 2 is not nearly enough to tip this factor in PAN's favor. *See, e.g.*, *Elm 3DS Innovations LLC v. SK Hynix Inc.*, No. 14-cv-1432, 2015 WL 4967139, at *7 (D. Del. Aug. 20, 2015) (denying motion to transfer to the Northern District of California, defendant's principal place of business, because "the amount of any trial-related travel for employees is not likely to be large—and would be zero if (as with most cases) this case never goes to trial."); *ZapFraud, Inc. v. FireEye, Inc.*, No. 19-cv-1688, 2020 WL 4336058, at *4 (D. Del. July 28, 2020) ("[T]he amount of inconvenience that any of FireEye's employees might face via travel to Delaware [from the Northern District of California] is not likely to be large—particularly if this case does not result in a trial.").[10]

Moreover, PAN is a Delaware corporation, "and has necessarily consented to suit in this jurisdiction" through its incorporation here, so it "should not be successful in arguing that litigation in [Delaware] is inconvenient" unless it can show "a unique or unexpected burden." *AIP Acquisition LLC v. iBasis, Inc.*, No. 12-cv-616, 2012 WL 5199118, at *4 (D. Del. Oct. 19, 2012) (citation omitted).[11] There is nothing unique or unexpected about any burden PAN will take on by litigating a patent infringement case here.

Indeed, PAN has defended at least two patent infringement cases in this District before. In the first case, *Juniper Networks, Inc. v. Palo Alto Networks, Inc.*, No. 11-cv-1258 (D. Del., filed

---

[10] PAN stays silent with respect to its Israeli employees for this factor, but it would likely be more convenient for them to travel to California than to Delaware if this case goes to trial.

[11] *See also, e.g.*, *Jones Pharma, Inc. v. KV Pharm. Co.*, No. 03-cv-786, 2004 WL 323109, at *2 (D. Del. Feb. 17, 2004) (Because defendant "chose to avail itself of the laws of Delaware" by incorporating here, "it may not now complain because [plaintiff] decided to sue it in this state."); *Kroy IP Holdings, LLC v. Groupon, Inc.*, No. 17-cv-1405, 2018 WL 4905595, at *5 (D. Del. Oct. 9, 2018) ("Groupon's allegations of inconvenience are contradicted by its choice to incorporate in Delaware."), *reports and recommendations adopted*, No. 17-cv-1405, 2018 WL 5724013 (D. Del. Nov. 1, 2018), No. 17-cv-1405, 2018 WL 6499675 (D. Del. Dec. 10, 2018).

Dec. 19, 2011), PAN did not move to transfer.  In the second case, *Selective Signals, LLC v. Palo Alto Networks, Inc.*, No. 17-cv-1470 (D. Del., filed Oct. 18, 2017), PAN *stipulated to transfer to the District of Delaware* from the Eastern District of Texas.  *See* Ex. 5.  And now, on its third time litigating in this District, PAN has moved to dismiss, availing itself of this Court's resources.[12]

PAN has further shown a *desire* to litigate here and avail itself of Delaware law by (1) selecting Delaware as the exclusive jurisdiction and governing law for its Equity Incentive Plan (Ex. 6)[13]; (2) selecting Delaware law to govern its Deferred Compensation Plan (Ex. 7)[14]; and (3) relying on its Delaware incorporation and Delaware law to "discourage takeovers" (Ex. 8)[15].

In sum, PAN cannot credibly claim that this venue—where it incorporated, operates, infringes the Patents-in-Suit, litigates, and even contractually requires *others* to litigate—is inconvenient.  While it may be *more* convenient for PAN (and better for trying to avoid this District's prior claim construction) for it to litigate in the Northern District of California (*see supra* Factor 2), that does not support transfer.  *See Personalized User Model*, 2009 WL 3460767, at *2.

Even if PAN had shown a material difference in burden between the two fora, PAN plainly

---

[12] PAN argues that the Patents-in-Suit are ineligible for patenting under 35 U.S.C. 101 as directed to abstract ideas.

[13] "Choice of Law; Choice of Forum. The Plan, all Awards and all determinations made and actions taken under the Plan . . . will be governed by the laws of the State of Delaware without giving effect to principles of conflicts of law. For purposes of litigating any dispute . . . any such litigation will be conducted in Delaware Court of Chancery, or the federal courts for the United States for the District of Delaware, and no other courts, regardless of where a Participant's services are performed."

[14] "Governing Law. To the extent not preempted by ERISA, the laws of the state of Delaware shall govern the construction and administration of the Plan."

[15] "Our COI and Bylaws contain certain provisions that could have the effect of delaying, deferring or discouraging another party from acquiring control of the Company. These provisions and certain provisions of Delaware law, which are summarized below, could discourage takeovers, coercive or otherwise. These provisions are also designed, in part, to encourage persons seeking to acquire control of us to negotiate first with our board of directors."

could shoulder that burden.  PAN is a global company with thousands of employees and revenue of $5.5 billion in 2022.  Ex. 20.  Thus, PAN's "size, financial resources, and status as a Delaware corporation negate its assertion that it would be inconvenienced by having to litigate in Delaware." *Rosebud*, 2018 WL 6061343, at *4.  *See also, e.g.*, *Elm 3DS Innovations*, 2015 WL 4967139, at *7 ("SK hynix is a 'large' international corporation, boasting 443 U.S.-based employees and a number of large corporate clients (such as Apple, Intel, Nvidia and HP)" so it could "bear any increased costs associated with litigating in Delaware (as opposed to the proposed transferee forum)."); *Bristol-Myers Squibb Co. v. Merck & Co.*, No. 14-cv-1131, 2015 WL 13683600, at *1 n.1 (D. Del. Apr. 29, 2015) ("In this case, Merck is a corporation with global reach and annual revenues in the billions.  The court concludes litigating in Delaware will not impose an undue financial burden on Merck.").  Thus, this factor weighs against transfer.

### 5.   Factor 5: No Witnesses Would Be Unavailable in Delaware

PAN claims this factor supports transfer because "[m]ost of the expected witnesses, including two of the three inventors, reside in California and no expected witnesses reside in Delaware."  Mot. at 12.  Not so.  The convenience of witnesses matters "*only* to the extent that the witnesses may *actually be unavailable* for trial in one of the fora." *Jumara*, 55 F.3d at 879 (emphasis added).  PAN knew this because it cited the full factor in its Legal Standard section but distorted the law when applying it to the facts of this case.  *Compare* Mot. at 6 (articulating the correct standard for this factor), *with id.* at 12 (ignoring the unavailability component when analyzing this factor).  PAN does not argue any potential witness would actually be unavailable for trial in Delaware, so this factor does not favor transfer.[16]

At any rate, PAN could not show this factor favors transfer.  PAN's employees "carry no

---

[16] PAN may not advance such arguments for the first time in its reply.  D. Del. LR 7.1.3(c)(2).

weight in the 'balance of convenience' analysis since each party is able to procure the attendance of its own employees." *Trilegiant Loyalty Sols., Inc. v. Maritz, Inc.*, No. 04-cv-360, 2005 WL 441077, at *3 (D. Del. Feb. 15, 2005) (citation omitted).[17]  And PAN's unsupported speculation that the third-party inventors might be "unduly inconvenienced" is wrong.  One resides in Massachusetts—far closer to Delaware—and is able and willing to travel to Delaware for trial. *See* Schneier Decl. ¶ 5.  The other two inventors are able and willing to travel to Delaware for trial. *See* Declarations of Jon Callas and Andrew Gross.  Thus, this factor is neutral at best.[18]

### 6.  Factor 6: The Parties Agree the Books and Records Location Factor is Neutral

The Parties agree there is no difficulty in producing books and records in either fora.

## C.  THE PUBLIC INTEREST FACTORS WEIGH AGAINST TRANSFER

### 1.  Factor 7: The Enforceability of Judgment Factor Weighs Against Transfer

BT agrees with PAN that it could enforce a judgment against PAN itself in the Northern District of California (or in Delaware).  But BT is likely to discover that other PAN-owned or -affiliated entities are directly or indirectly liable for infringing BT's patents (in which case BT would amend its complaint accordingly), or that they are otherwise appropriate targets for enforcing a judgment entered against PAN. PAN's most recent Form 10-K lists *25 subsidiaries incorporated in Delaware* (and none in California).  Ex. 20.  Keeping this action in Delaware will allow BT to enforce any judgment against such subsidiaries, as appropriate, who may not be subject to personal jurisdiction in California.  Thus, this factor weighs against transfer.  *See Sprint Commc'ns, L.P. v. Cox Commc'ns, Inc.*, 896 F. Supp. 2d 1049, 1066 (D. Kan. 2012) (finding

---

[17] Further, other former employees of the original owner of the Patents-in-Suit, who work for BT Americas and are familiar with the documents and history of the patented product, are located on the East Coast. Ex. 21.

[18] At any rate, this factor has minimal weight because "so few civil cases today proceed to trial (and at trial, so few fact witnesses testify live)." *Pragmatus*, 2012 WL 4889438, at *10.

Delaware was favored over Kansas "[b]ecause the [Kansas court] lacks personal jurisdiction over [defendant]," and thus "it may not enforce a judgment against it.").

> **2.  Factor 8: Litigation in Delaware Will be More Efficient than in the Northern District of California**

The "practical considerations" factor considers reasons why one forum would be easier, more expeditious, or less expensive than the other. *Jumara*, 55 F.3d at 879.  PAN's sole argument that this factor favors transfer is about the location of "relevant employees and documents" (Mot. at 13-14), which is "simply a re-hash of arguments [PAN] made, in exactly the same way, as to other *Jumara* factors," so the Court "[should] not 'double-count' them here." *Tessera*, 2017 WL 1065865, at *10 (quoting *Elm 3DS Innovations*, 2015 WL 4967139, at *11).

Meanwhile, PAN ignores the "broader *public* costs of transfer" considered as part of this public interest factor. *AIP Acquisition LLC*, 2012 WL 5199118, at *5 (emphasis added). Proceeding in Delaware will serve judicial economy for two main reasons.

First, BT has litigated the Patents-in-Suit here.  In the Fortinet Litigation, the Court issued a detailed claim construction order for the Patents-in-Suit. *Brit. Telecomms. Plc*, 2021 WL 3418067.  That ruling has considerable weight in this District, whereas a court in California may give it less weight creating the potential for conflicting opinions.  As explained in *Pragmatus*: "a Judge of this Court will have the benefit of reviewing another's Judge's decision on a similar motion, involving a similar complaint and identical arguments, applying the same precedent to the same legal issues." 2012 WL 4889438, at *12.  "Such efficiencies, gained by having these various litigation matters in one Court, can be significant." *Id.*

Second, PAN moved to dismiss BT's complaint in this Court.  D.I. 11.  BT opposed.  D.I. 19.  Thus, the parties and the Court will be expending resources on PAN's pending Motion to Dismiss (not to mention this motion).  It would be inefficient for the parties to brief these issues a

second time in a second court.[19]  *See, e.g.*, *Pragmatus*, 2012 WL 4889438, at *13 ("This Court has already gained some familiarity with the case and with the legal issues raised in the pending motions," so "there would be a net loss of efficiency for the federal court system as a whole" if the case were transferred to a new court).  Thus, it is more practical to litigate this case in Delaware than in the Northern District of California, and this factor weighs strongly against transfer.

### 3. Factor 9: There is No Meaningful Difference in Case Administration Between the Two Fora

This factor is considered neutral when there are only small differences between two fora in terms of time to trial.  For example, in *Elm 3DS Innovations*, this Court found this factor neutral, explaining that "[t]hough the number of patent cases in this District may be greater than in the [Northern District of California] . . . the proffered statistics demonstrate that this Court is able to move those cases to trial at a roughly similar rate."  2015 WL 4967139, at *11.  When *Elm 3Ds Innovations* was decided, the Northern District of California was deciding cases 3.6-months faster than this District.  *Id*.  That gap has now closed to just over a month.[20]  And while PAN "cit[es] statistics regarding the current caseload in this district," "the case management orders [in this district] always start with the schedules proposed by the litigants" and "[i]f there is a need to expedite proceedings, that need is generally accommodated by the court."  *Kroy*, 2018 WL 4905595, at *6 (second alteration in original) (citation omitted).  Thus, this factor is neutral at best.

### 4. Factor 10: The Parties Agree the Local Interest Factor is Neutral

The Parties agree that this factor is neutral as BT's claims arise under federal patent law.

---

[19] As mentioned (*supra* p. 1), BT would be prejudiced if it had to re-brief its Opposition to the Motion to Dismiss under potentially changed circumstances as a result of PAN's choice to move to dismiss while concurrently filing its motion to transfer.

[20] *United States District Courts – National Judicial Caseload Profile*, https://www.uscourts.gov/sites/default/files/fcms_na_distprofile0630.2022_0.pdf (last visited Mar. 17, 2023) (36.0 months for Delaware; 34.7 months for the Northern District of California).

5. **Factor 11: Delaware Public Policy Supports Delaware Corporations Using Delaware as a Dispute Resolution Forum**

PAN contends this factor is neutral.  Not so.  When parties to an action are Delaware companies, like BT Americas and PAN, this factor weighs against transfer because "the public policy of Delaware encourages the use by Delaware corporations of Delaware as a forum for resolution of business disputes." *ZapFraud*, 2020 WL 4336058, at *7 (citation omitted).  *See also P Tech, LLC v. Arthrex, Inc.*, No. 21-cv-968, 2022 WL 1490733, at *6 (D. Del. May 11, 2022) (finding this factor weighed against transfer because "Plaintiff and Defendant are Delaware corporations and public policy encourages Delaware corporations to resolve disputes in Delaware courts."); *Kroy*, 2018 WL 4905595, at *7 (same).  Thus, this factor weighs against transfer.

6. **Factor 12: The Parties Agree that the Familiarity of the Trial Judges with the Applicable State Law in Diversity Cases Is a Neutral Factor**

The Parties agree that this factor is neutral as BT's claims arise under federal patent law.

## D.  THE *JUMARA* FACTORS WEIGH STRONGLY AGAINST TRANSFER

As this Court has explained, "transfer will be denied if the factors are evenly balanced or weigh only slightly in favor of the transfer."  *Pragmatus*, 2012 WL 4889438, at *3 (citation omitted).  "[U]nless the balance of convenience of the parties is *strongly in favor of defendant,* the plaintiff's choice of forum should prevail."  *Id.* (quoting *Shutte*, 431 F.2d at 25) (emphasis in original).

PAN is far from meeting its "heavy" burden on this motion.  Only a single factor (No. 2) arguably weighs even slightly in favor of transfer.  Five of the twelve factors (Nos. 5, 6, 9, 10, 12) are neutral, including three PAN concedes are neutral (Nos. 6, 10, 12).[21]  The remaining six factors all weigh against transfer (Nos. 1, 3, 4, 7, 8, 11)—some strongly against transfer.  Thus, on balance,

---

[21] PAN also contends factors 7 and 11 are neutral, but as discussed they weigh against transfer.

the *Jumara* factors weigh *strongly against* transfer.

Even if the Court were to find that some disputed factors support transfer, PAN still fails to make the required showing that a transfer to the Northern District of California is *strongly favored*. *See, e.g.*, *Tessera*, 2017 WL 1065865, at *12 (denying motion to transfer even though six *Jumara* factors favored transfer, while one weighed against transfer and the rest were neutral, because the factors did not *strongly* favor transfer); *Fink v. Wilmington Tr., N.A.*, 473 F. Supp. 3d 366, 376 (D. Del. 2020) (denying motion to transfer with four factors favoring transfer, one weighing against transfer, and the rest neutral). Thus, the Court should deny the motion to transfer.

### E. IN THE ALTERNATIVE, THE COURT SHOULD STAY ITS DECISION TO ALLOW VENUE-RELATED DISCOVERY AND FURTHER BRIEFING

For the reasons explained above, PAN's motion to transfer should be denied. In the alternative, the Court should stay any decision on PAN's motion to allow BT to obtain discovery from PAN relevant to the motion and then to submit supplemental briefing concerning newly discovered facts. *See McDonnell Douglas Corp. v. Polin*, 429 F.2d 30, 31 (3d Cir. 1970) (noting that "motion to transfer under § 1404(a) should be considered and decided after giving both parties an opportunity to complete their discovery solely with respect to the question of transfer"). BT expects that such discovery will further demonstrate, among other things, that PAN operates, hires, uses, advertises, offers to sell, and sells the accused products nationally, including in Delaware.

### V.   <u>CONCLUSION</u>

BT respectfully requests that the Court deny PAN's motion to transfer or, in the alternative, stay any decision to allow discovery and supplemental briefing.

OF COUNSEL:

Bart H. Williams
PROSKAUER ROSE LLP
2029 Century Park East
Suite 2400
Los Angeles, California 90067
310-557-2900
bwilliams@proskauer.com

Baldassare Vinti
Nolan M. Goldberg
PROSKAUER ROSE LLP
Eleven Times Square
New York, New York 10036
212-969-3000
bvinti@proskauer.com
ngoldberg@proskauer.com

Edward Wang
PROSKAUER ROSE LLP
1001 Pennsylvania Avenue NW
Suite 600
Washington, DC 20004
202-416-6800
ewang@proskauer.com

Dated: March 20, 2023
10695859

POTTER ANDERSON & CORROON LLP

By:  */s/ Philip A. Rovner*
    Philip A. Rovner (#3215)
    Jonathan A. Choa (#5319)
    Hercules Plaza
    P.O. Box 951
    Wilmington, DE 19899
    (302) 984-6000
    provner@potteranderson.com
    jchoa@potteranderson.com

*Attorneys for Plaintiff British
Telecommunications plc and
BT Americas, Inc.*

21