**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| BRITISH TELECOMMUNICATIONS PLC and BT AMERICAS, INC., <br><br> Plaintiffs, <br><br> v. <br><br> PALO ALTO NETWORKS, INC., <br><br> Defendant. | C.A. No. 22-1538-CJB <br><br> **JURY TRIAL DEMANDED** |

**REPLY BRIEF IN SUPPORT OF DEFENDANT'S MOTION TO TRANSFER**
**TO THE NORTHERN DISTRICT OF CALIFORNIA**

Dated: April 10, 2023

Brian E. Farnan (Bar No. 4089)
Michael J. Farnan (Bar No. 5165)
FARNAN LLP
919 N. Market St., 12th Floor
Wilmington, DE 19801
(302) 777-0300
(302) 777-0301 (Fax)
bfarnan@farnanlaw.com
mfarnan@farnanlaw.com

Adrian C. Percer (admitted *pro hac vice*)
Weil, Gotshal & Manges LLP
201 Redwood Shores Parkway
Redwood Shores, CA 94065
Telephone: (650) 802-3000
adrian.percer@weil.com

Anish R. Desai (admitted *pro hac vice*)
Tom Yu (admitted *pro hac vice*)
Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153
Telephone: (212) 310-8000
anish.desai@weil.com
tom.yu@weil.com

Priyata Y. Patel (admitted *pro hac vice*)

Weil, Gotshal & Manges LLP
2001 M Street, NW Suite #600
Washington, D.C. 20036
Telephone: (202) 682-7000
priyata.patel@weil.com

*Attorneys for Defendant*

## TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ...................................................................................................1

II.     ARGUMENT ........................................................................................................1

    A.     The Private Interest Factors Strongly Favor Transfer...............................1

        1.     Factor 1: BT's Choice of Forum is Not Entitled to "Paramount
                Consideration" ................................................................................1

        2.     Factor 2: PAN's Choice of Forum Merits Deference ...................3

        3.     Factor 3: The Claims Arose in California....................................5

        4.     Factor 4: The Northern District of California is Decidedly More
                Convenient for PAN, and Not Inconvenient for BT ....................7

        5.     Factor 5: Convenience for Witnesses .......................................12

    B.     The Public Interest Factors Strongly Favor Transfer...............................12

        1.     Factor 7: BT's Argument Regarding Enforceability of Judgment
                is Irrelevant and Speculative.....................................................12

        2.     Factor 8: Litigation Efficiency Does Not Weigh Against Transfer
                ......................................................................................................13

        3.     Factor 9: BT Does Not Dispute that This Court Has a Heavier
                Caseload than Northern District of California ...........................14

        4.     Factor 11: Public Policy of the Fora is Neutral.........................14

    C.     The Court Should Deny BT's Alternative Motion for Venue-Related
            Discovery ................................................................................................15

III.    CONCLUSION...................................................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Adobe Inc.*,
  823 F. App'x 929 (Fed. Cir. 2020) .......................................................................9

*Affymetrix, Inc. v. Synteni, Inc.*,
  28 F. Supp. 2d 192 (D. Del. 1998)........................................................................12

*Allen Med. Sys., Inc. v . Mizuho Orthopedic Sys., Inc.*,
  No. CV 21-1739-CFC, 2022 WL 1046258 (D. Del. Apr. 7, 2022) ....................6, 14

*APV N. Am., Inc. v. Sig Simonazzi N. Am., Inc.*,
  295 F. Supp. 2d 393 (D. Del. 2002).....................................................................10

*Blackbird Tech. LLC v. Cloudfare, Inc.*,
  No. CV 17-283, 2017 WL 4543783 (D. Del. Oct. 11, 2017) ...............................10

*Blackbird Tech LLC v. TuffStuff Fitness, Intl., Inc.*,
  No. CV 16-733-GMS, 2017 WL 1536394 (D. Del. Apr. 27, 2017)........................4

*Digital Funding, LLC v. Umpqua Bank*,
  No. CV 17-111, 2017 WL 11556411 (D. Del. Aug. 11, 2017) ...............................1

*Elm 3DS Innovations LLC v. Hynix Inc.*,
  No. CV 14-1432-LPS-CJB, 2015 WL 4967139 (D. Del, Aug. 20, 2015)................9

*Fortinet, Inc. v. FireEye Inc.*,
  944 F. Supp. 2d 352 (D. Del. 2013).......................................................................*14*

*In re Genentech*,
  566 F.3d 1338 (Fed. Cir. 2009)..............................................................................8

*Genentech, Inc. v. Amgen Inc.*,
  No. CV 17-1407-GMS, 2018 WL 503253 (D. Del. Jan. 22, 2018).......................10

*Good Tech. Corp. v. MobileIron, Inc.*,
  No. CV 14-1308-LPS-CJB, 2015 WL 1458091 (D. Del. Mar. 27, 2015) ...............3

*Illumina, Inc. v. Complete Genomic, Inc.*,
  No. CIV.A. 10-649, 2010 WL 4818083 (D. Del. Nov. 9, 2010) ...........................15

*Intell. Ventures I LLC v. Altera Corp.*,
  842 F. Supp. 2d 744 (D. Del. 2012)......................................................................14

*Intell. Ventures I LLC v. Checkpoint Software Techs. Ltd.*,
    797 F. Supp. 2d 472 (D. Del. 2011) ........................................................................................2

*Ithaca Ventures k.s. v. Nintendo Of Am. Inc.*,
    No. CV 13-824-GMS, 2014 WL 4829027 (D. Del. Sept. 25, 2014) .......................................6

*Linex Techs., Inc. v. Hewlett-Packard Co.*,
    No. CIV.A. 11–400–GMS, 2013 WL 105323 (D. Del. Jan. 7, 2013) ..............................1, 2, 3

*In re Link_A_Media Devices Corp.*,
    662 F.3d 1221, 1223, 1224 (Fed. Cir. 2011) ..........................................................1, 2, 4, 9, 10

*McDonnell Douglas Corp. v. Polin*,
    429 F.2d 30 ...........................................................................................................................15

*McRo, Inc. v. Activision Blizzard, Inc.*,
    No. CV 12-1508-LPS-CJB, 2013 WL 6571618 (D. Del. Dec. 13, 2013) .........................14, 15

*Micro Design LLC v. Asus Computer Int'l.*,
    No. CV 14-837-LPS-CJB, 2015 WL 2089770 (D. Del. May 1, 2015) ...................................4

*NXP USA, Inc. v. IMPINJ, Inc.*,
    No. CV 19-1875-RGA, 2020 WL 5665257 (D. Del. Sept. 23, 2020) .....................................1

*Papst Licensing GmbH & Co. KG v. Lattice Semiconductor Corp.*,
    126 F. Supp. 3d 430 (D. Del. 2015) ....................................................................................5, 8

*Pragmatus AV LLC v. Yahoo! INc.*,
    No. CIV. 11-902-LPS-CJB, 2012 WL 4889438 (D. Del. Oct. 15, 2012) ..........................13, 14

*Shure Inc. v. ClearOne*,
    No. CV 19-1343-RGA-CJB, 2020 WL 3250176 (D. Del. Apr. 15, 2020) ..............................5

*Tumbaga v. Equifax Info. Servs.*,
    No. CV 19-1560 (MN), LLC, 2020 WL 4673907 (D. Del. Aug. 12, 2020) .......................7, 11

*Wesley-Jessen Corp. v. Pilkington Visoncare, Inc.*,
    157 F.R.D. 215 (D. Del. 1993) ............................................................................................10

*ZapFraud, Inc. v. FireEye, Inc.*,
    No. CV 19-1688-CFC, 2020 WL 4336058 (D. Del. July 28, 2020) ..................................9, 12

## Other Authorities

Fed. R. Civ. P. 12(b) ...................................................................................................................11

iii

## I.       INTRODUCTION

The Court should transfer this case to the Northern District of California.  This case has no connection with this District other than BT Americas' and PAN's incorporation here.  But the Federal Circuit has made clear, "the mere fact that Delaware is the plaintiffs' choice of forum and . . . the defendants' state of incorporation will not, standing alone, prevent this Court from transferring this suit to another forum." *In re Link_A_Media Devices Corp.*, 662 F.3d 1221, 1223 (Fed. Cir. 2011).

There is no dispute that (1) the accused products are predominantly produced, designed, manufactured, and marketed in California, (2) almost all potential party witnesses reside in California, and none in Delaware, and (3) two of the three identified third-party witnesses (the inventors) reside in California, and none in Delaware.  As this Court has recognized, "there is legal reality and then there is actual reality." *Digital Funding, LLC v. Umpqua Bank*, No. CV 17-111, 2017 WL 11556411, at *1 (D. Del. Aug. 11, 2017).  "And the actual reality is that little about this case has anything to do with Delaware." *Id.*

## II.       ARGUMENT

### A.       The Private Interest Factors Strongly Favor Transfer

#### 1.       Factor 1: BT's Choice of Forum is Not Entitled to "Paramount Consideration"

BT does not dispute that neither BT plc nor BT Americas has a physical presence in Delaware.  Its choice of forum is therefore not entitled to the "paramount consideration" BT urges. *Linex Techs., Inc. v. Hewlett-Packard Co.*, No. CIV.A. 11–400–GMS, 2013 WL 105323, at *3 (D. Del. Jan. 7, 2013) (holding that plaintiff's "forum preference is entitled to something less than the paramount consideration that [plaintiff] urges" when the plaintiff is incorporated but has no physical presence in Delaware); *NXP USA, Inc. v. IMPINJ, Inc.*, No. CV 19-1875-RGA, 2020 WL

5665257, at *2 (D. Del. Sept. 23, 2020) (holding that plaintiffs' choice of forum weighs "not as strongly as it would if Plaintiffs had their principal place of business (or, indeed, any place of business) in Delaware.").

None of BT's reasons for filing this case in Delaware mandates otherwise.  First, BT points to its incorporation in Delaware.  D.I. 21, "Opp.," at 8.  But mere incorporation does not warrant the "paramount consideration" that BT urges.  *Linex Techs.*, 2013 WL 105323, at *3.  And the Federal Circuit has made clear that the mere fact that Delaware is PAN's state of incorporation does not preclude transfer.  *In re Link_A_Media*, 662 F.3d at 1223 ("[T]he mere fact that Delaware is the plaintiffs' choice of forum and . . . the defendants' state of incorporation will not, standing alone, prevent this Court from transferring this suit to another forum.").  BT also argues that its "internal processes and knowledge are geared toward filing, maintaining, and supporting litigation in Delaware."  Opp. at 8.  But BT cites no authority suggesting that litigation history is a basis for giving plaintiff's choice of forum "paramount consideration."  *See id.* at 7-8.

Second, BT argues that Delaware is a reasonable forum because BT "can have certainty that there will be personal jurisdiction over that defendant."  *Id.* at 8.  But there is no dispute that PAN is headquartered in California, or that the Northern District of California has personal jurisdiction over PAN.  *Id*. at 16 (agreeing that BT could enforce a judgment against PAN in the Northern District of California).

Third, BT argues that this Court has "significant experience with patent litigation matter."  *Id.* at 8.  Federal district courts, however, are presumed to have the same knowledge of the applicable law.  *Intell. Ventures I LLC v. Checkpoint Software Techs. Ltd.*, 797 F. Supp. 2d 472, 486-487 (D. Del. 2011).  Notwithstanding, the Northern District of California has substantial experience overseeing patent disputes.  BT also argues that this Court's claim construction in a

2

previous litigation ("the *Fortinet* litigation") provides it with a reason to bring suit in this Court. However, the *Fortinet* claim construction order is not binding on this Court, and has the same persuasive effect on this Court and the Northern District of California. Furthermore, the *Fortinet* case settled shortly after claim construction, before the close of fact discovery or summary judgment motions. The *Fortinet* litigation does not justify enhancing the weight of BT's forum choice.

BT further argues that Delaware is its "home turf" because BT Americas is incorporated in Delaware. *Id.* at 9-10. BT Americas, however, has no physical presence here and therefore, even if the Court finds that Delaware is BT Americas' "home turf," its choice of forum does not merit "maximum weight." *Linex Techs.*, 2013 WL 105323 at *3. Moreover, BT plc, a foreign entity, appears to be controlling BT Americas' litigation decisions. *See* Ratcliffe Decl. at ¶ 6 (explaining that BT plc's in-house counsels supervise this action). BT does not dispute that a foreign plaintiff's forum choice is entitled to less deference. Opp. at 9-10.

Because BT's only legitimate tie to Delaware is the incorporation of BT Americas and because BT has no physical presence in Delaware, this factor only weighs slightly against transfer.

### 2. Factor 2: PAN's Choice of Forum Merits Deference

In analyzing this factor, courts "tended to examine whether the defendant can articulate rational, legitimate reasons to support [its] preference [of forum]." *Good Tech. Corp. v. MobileIron, Inc.*, No. CV 14-1308-LPS-CJB, 2015 WL 1458091, at *3 (D. Del. Mar. 27, 2015). PAN has articulated several legitimate reasons for its preference of the Northern District of California, including the location of its headquarters, location for developing the accused products, convenience for party witnesses, and accessibility of evidence. *See Micro Design LLC v. Asus Computer Int'l.*, No. CV 14-837-LPS-CJB, 2015 WL 2089770, at *6 (D. Del. May 1, 2015) (holding that "physical proximity of a defendant's place of business (and relatedly, of witnesses

3

and evidence potentially at issue in the case) to the proposed transferee district is a clear, legitimate basis for seeking transfer to that district.").

BT does not dispute that this factor weighs in favor of transfer, but instead, argues that PAN's forum preference is not entitled to any meaningful weight. Opp. at 10-11. Acknowledging that relevant evidence is predominately located in the transferee district, BT argues that the location of evidence does not support PAN's forum preference because the evidence can be produced electronically in either forum. *Id.* at 10. But although "modern technology [has made] transporting electronic evidence less onerous," courts recognize that the location of evidence carries weight to the transfer analysis. *Blackbird Tech LLC v. TuffStuff Fitness, Intl., Inc.*, No. CV 16-733-GMS, 2017 WL 1536394, at *5 (D. Del. Apr. 27, 2017) (citing *Link_A_Media*, 662 F.3d at 1224; *Smart Audio Techs, LLC v. Apple, Inc.*, 910 F. Supp. 718, 732 (Fed. Cir. 2012)).  BT also argues that PAN's identification of potential California-based witnesses is a "vague assertion."  It is not.  As set forth in PAN's supporting declaration, and not disputed by BT, "the Accused Products were predominantly designed, developed, tested, and continue to be maintained at PAN headquarters, and the engineering teams and personnel most knowledgeable about design, development, and maintenance predominantly work from PAN headquarters."  D.I. 14, "Mot.," at 4 (citing D.I. 16, "Ince-Schroeder Decl." at ¶¶ 5-9).[1]  None of this work was done in Delaware and none of the knowledgeable witnesses is in Delaware.

BT also does not cite any authority suggesting PAN's forum preference automatically warrants lessened weight.  Case law supports the contrary—defendant's forum preference is entitled to the same weight as the plaintiff's forum preference. *Shure Inc. v. ClearOne*, No. CV

---

[1] BT states in a footnote that "only 64 of the 434 positions PAN is hiring are in California."  Mot. at 10, fn. 9.  The fact that BT hires outside of California is not irrelevant to where potential witnesses for ***this case*** are located.

19-1343-RGA-CJB, 2020 WL 3250176, at *5, fn. 5 (D. Del. Apr. 15, 2020) ("To the extent that [plaintiff] suggests that in the transfer analysis, the movant's choice of forum is automatically entitled to less weight than that given to a plaintiff's choice of forum, (D.I. 42 at 11–12), the Court has previously explained why it cannot find any support for that proposition in governing Third Circuit case law.").

Because PAN has articulated numerous legitimate and rational reasons for its forum preference, this factor strongly favors transfer and at least cancels out the plaintiff's forum choice factor.

### 3.    Factor 3: The Claims Arose in California

There is no dispute that the accused products are predominantly produced, designed, and manufactured in the Northern District of California.   Therefore, "[a]lthough some accused products may be used to perform the patented methods in Delaware . . . the allegedly infringing acts at issue have a far stronger connection to the Northern District of California than they do with Delaware (or any other district)." *Papst Licensing GmbH & Co. KG v. Lattice Semiconductor Corp.*, 126 F. Supp. 3d 430, 439 (D. Del. 2015); *id.* at 439 ("[A]s to this factor, this Court typically focuses on the location of the production, design and manufacture of the accused instrumentalities.").

BT relies on *Stephenson v. Game Show Network, LLC* to argue that the location of production, design and manufacture "loses force when the product is not a physical product." 933 F. Supp. 2d 674, 679 (D. Del. 2013); Opp. at 11.  That case does not apply.  BT's complaint specifically alleges that "physical appliances (PA-Series)" Next Generation Firewalls practice the claims of its patents.  Complaint at ¶ 46.  Moreover, the accused product in *Stephenson* was "a digital website accessible from anywhere." 933 F. Supp. 2d at 679.  The accused products are not "accessible from anywhere," but instead need to be purchased from PAN.  PAN also designs its

marketing strategy for the accused products from California (Ince-Schroeder Decl. at ¶ 7), which "ultimately will bear on [plaintiff's] claims of induced infringement and willful infringement." *Ithaca Ventures k.s. v. Nintendo Of Am. Inc.*, No. CV 13-824-GMS, 2014 WL 4829027, at *3 (D. Del. Sept. 25, 2014) ("These claims [of induced and willful infringement] implicate the defendants' knowledge and intent, and therefore 'arise' where the products are marketed.").

BT argues that PAN's alleged infringement is national and includes infringement in Delaware.  Opp. at 11; *see also id.* at 12 (arguing that PAN sells the Accused Products nationally and in Delaware through regional partners).   But BT does not specify the magnitude of infringement in Delaware.  In fact, PAN's Delaware bookings (*i.e.,* contract values for deals) are *de minimus* compared to bookings for California and nationally.  Delaware bookings are ***less than 1%*** of the bookings for California in 2022 and less than 0.2% of bookings nationally.  Saxena Decl. at ¶ 2.  In contrast, bookings in California in 2022 comprise more than 15% of PAN's national bookings.  *Id.*  There can be no doubt that California has a superior interest in the outcome of this case.  *Allen Med. Sys., Inc. v. Mizuho Orthopedic Sys., Inc.*, No. CV 21-1739-CFC, 2022 WL 1046258, at *2 (D. Del. Apr. 7, 2022) (finding this factor favors transfer when defendant only have "miniscule" sales in Delaware, but its California sales accounts for 10.1% of overall sales).  Indeed, California's interest is particularly acute because BT is seeking to permanently enjoin PAN, which will have a grossly disproportionate effect in California.  Complaint at ¶ 27.

BT also argues that PAN is attempting to hire employees in Delaware, *e.g.,* a systems engineer for healthcare accounts.  Opp. at 10-11.  BT, however, provides no evidence that this singular open position has anything to do (it does not) with the asserted claims.

6

Because the accused products are designed, produced, manufactured, and marketed in California, BT's claims—including direct, willful, and induced infringement—arose in California. Therefore, this factor strongly favors transfer.

### 4. Factor 4: The Northern District of California is Decidedly More Convenient for PAN, and Not Inconvenient for BT

BT concedes that the Northern District of California is more convenient for PAN than this District. Opp. at 14. BT, however, asserts six alleged reasons why Delaware is more convenient for BT. *Id.* at 12. None of these reasons shows that BT would be materially inconvenienced by litigating in the Northern District of California.

First, BT identifies two BT employees who reside in Pennsylvania and Maryland and allegedly "are familiar with the history of Counterpane's patented product." *Id.* However, BT does not explain what information these two employees possess that is specifically relevant to this case, and cannot be obtained from other witnesses such as Mr. Schneier, an inventor and former BT and Counterpane employee.

Second, BT argues that it would be more convenient for Mr. Schneier to travel from Massachusetts to Wilmington than to California. *Id.* But Mr. Schneier is not a BT employee and has no apparent involvement with BT other than this litigation. Therefore, Mr. Schneier's convenience has no bearing on this factor, which considers the convenience of ***parties***.[2]

Third, BT argues that it would be more convenient for its UK based in-house counsel to travel to Wilmington than to California. *Id.* But these individuals "will be required to travel a significant distance no matter where they testify[,]" and travelling to California does not cause any

---

[2] Mr. Schneier's convenience is relevant to factor 5: convenience for witnesses, and the Court should not double count here. *Tumbaga v. Equifax Info. Servs.*, No. CV 19-1560 (MN), LLC, 2020 WL 4673907, at *5 (D. Del. Aug. 12, 2020) (stating that the Court will not double-count contentions relevant to other *Jumara* factors).

materially additional inconvenience, particularly because in-house counsel can fly directly to San Francisco Airport or San Jose Airport.[3]   *In re Genentech*, 566 F.3d 1338, 1344 (Fed. Cir. 2009); *Papst Licensing*, 126 F. Supp. 3d at 440-441 (holding that difference in flight time from Germany to Delaware and to California does not cause material inconvenience to Plaintiff, especially when Plaintiff "touts itself as an international entity that is '[a]ctive worldwide'.").

Fourth, BT argues that it is familiar with this District and its law.  Opp. at 12.  This is a patent case involving federal law, not Delaware law.  And BT cites no authority to support its position that familiarity with a particular court is a valid consideration for the convenience of a party.  Notwithstanding, BT's lead counsel, Mr. Williams is located in Los Angeles, is a member of the California bar and a former assistant U.S. Attorney in the Central District of California, and therefore lacks no familiarity with California courts.

Fifth, BT points to its New York satellite office, which allegedly supports its litigations in Delaware.  *Id*.  But BT does not explain how such office—which BT characterizes as a "sales office" or "Customer Experience Center"—supports its litigations.  Yu Decl., Ex. 1 (announcing opening of BT's "sales office" and "Customer Experience Center" in New York).  Moreover, any convenience BT may derive from its non-Delaware satellite sales office is immaterial compared to the overwhelming convenience to PAN resulting from its California *headquarters*, where almost all potential PAN witnesses and in-house counsel are physically based.

Sixth, BT argues that this Court has familiarity with the asserted patents.  BT's argument is irrelevant because this factor inquires the convenience for *parties*, not the court.  Regardless, the

---

[3] BT does not dispute that flight times from London to Delaware and to the Northern District of California are commensurate.  Mot. at 12.

*Fortinet* case was dismissed shortly after claim construction, and Chief Judge Connolly, who presided over the *Fortinet* case, is no longer presiding over this case.

BT's additional arguments with respect to this factor can also be dismissed. BT argues that PAN is not materially inconvenienced by litigating in Delaware and thus, this factor does not favor transfer. But there can be no dispute that litigating in this District would incur significantly more cost for PAN than in California. The vast majority of PAN witnesses are located in the Northern District of California, including technical, marketing, and financial witness. Ince-Schroeder Decl. at ¶ 5. Indeed, *Elm 3DS Innovations LLC v. Hynix Inc.*, No. CV 14-1432-LPS-CJB, 2015 WL 4967139 (D. Del, Aug. 20, 2015) and *ZapFraud, Inc. v. FireEye, Inc.*, No. CV 19-1688-CFC, 2020 WL 4336058 (D. Del. July 28, 2020), cases cited by BT, both held that this factor favored transfer when the defendant is headquartered in the transferee district. Moreover, to the extent that BT seeks discovery of third parties that make and assemble the accused physical components, those third parties are located in the Northern District of California. Saxena Decl. at ¶ 3.

In comparison, BT derives no additional convenience for litigating in this District as it does not identify a single potential witness who resides here. *See In re Adobe Inc.*, 823 F. App'x 929, 931 (Fed. Cir. 2020) (granting writ of mandamus to Texas court that directs district court to grant motion to transfer venue where the defendant "identified a significant number of its own employees as potential witnesses who reside in the Northern District of California. On the other hand, [plaintiff's] own employees will be coming from outside both districts.").

BT also argues that PAN's incorporation in Delaware precludes transferring. Opp. at 13. This argument has been rejected by the Federal Circuit and this Court. *Link_A_Media Devices*, 662 F.3d at 1223 ("[T]he defendants' state of incorporation will not, standing alone, prevent this Court from transferring this suit to another forum."); *APV N. Am., Inc. v. Sig Simonazzi N. Am.*,

9

*Inc.*, 295 F. Supp. 2d 393, 398-99 (D. Del. 2002) ("Where an alternative forum is more convenient and has more substantial connections with the litigation[,] incorporation in Delaware will not prevent transfer.") (internal quotations marks omitted).[4]  Moreover, PAN's incorporation does not change the fact that the transferee district would be significantly more convenient for PAN. *Blackbird Tech. LLC v. Cloudfare, Inc.*, No. CV 17-283, 2017 WL 4543783, at *8 (D. Del. Oct. 11, 2017) ("Although both Defendants are incorporated in Delaware and would likely not suffer great financial hardship by litigating there, it would naturally be much more convenient and less costly for Defendants to litigate in California.").

BT further contends that because PAN litigated other unrelated cases in this District, Delaware is an appropriate forum for this case.  This argument is without merit.  Those cases involve different sets of accused products and asserted patents, and are irrelevant to the parties' convenience in **this case**.  *Genentech, Inc. v. Amgen Inc.*, No. CV 17-1407-GMS, 2018 WL 503253, at *5 (D. Del. Jan. 22, 2018) ("Section 1404(a) requires individualized, case-by-case consideration of convenience and fairness.") (internal quotation marks omitted).  The fact that PAN did not move to transfer in one of its previous Delaware litigation shows that PAN evaluates

---

[4] BT cites a line of cases holding that an entity incorporated in Delaware "'should not be successful in arguing that litigation in [Delaware] is inconvenient' unless it can show 'a unique or unexpected burden.'"  Opp. at 13 (citing *AIP Acquisition LLC v. iBasis, Inc.*, No. CIV.A. 12-616 GMS, 2012 WL 5199118, at *4 (D. Del. Oct. 19, 2012); *id.* at fn. 11 (citing *Jones Pharma, Inc. v. KV Pharm. Co.*, No. CIV. A. 03-786 JJF, 2004 WL 323109, at *2 (D. Del. Feb. 17, 2004) and *Kroy IP Holdings, LLC v. Groupon, Inc.*, No. CV 17-1405-MN-SRF, 2018 WL 4905595, at *5 (D. Del. Oct. 9, 2018)).  This "unique or unexpected burden" standard originated from a 1993 case, and none of the courts applying this standard has ever found that the defendant satisfied this heightened burden.  *Wesley-Jessen Corp. v. Pilkington Visoncare, Inc.*, 157 F.R.D. 215, 218 (D. Del. 1993).  Thus, this "unique or unexpected burden" standard effectively makes defendant's incorporation in Delaware a dispositive factor in analyzing the convenience factor—one of the most important factors in transfer venue analysis—and is in direct conflict with the Federal Circuit's holding in *Link_A_Media*.  *See Blackbird Tech*, 2017 WL 4543783, at *7 (recognizing the tension between the "unique or expected burden" standard and *Link_A_Media*).

transfer on a case-by-case basis.[5]  BT also argues that PAN's selection of Delaware state law as the governing law for certain corporate governing documents "show[s] a desire to litigate" patent infringement case in Delaware.  Opp. at 14.  That argument is flawed because Delaware state law does not apply to patent infringement cases.  Thus, PAN's selection of Delaware state law for *other* non-patent issues does not indicate a desire to litigate patent cases in Delaware.

BT then argues that this District is convenient because PAN "avail[ed] itself of this Court's resource" by moving to dismiss the complaint.  Opp. at 14.  PAN had to file its motion to dismiss or waive its substantive right.  Fed. R. Civ. P. 12(b) ("A motion asserting any of these defenses must be made before pleading if a responsive pleading is allowed.").  If this case is transferred to the Northern District of California, PAN's motion to dismiss will be decided there and this Court will not need to expend resources on it.

Finally, BT boldly asserts that "PAN plainly could shoulder [the additional] burden" of litigating in Delaware because "PAN is a global company with thousands of employees and revenue of $5.5 billion in 2022."  Opp. at 15.  BT, however, touts that it "provides communications services in 180 countries and employs more than 100,000 people worldwide."  Complaint at ¶ 11.  BT also ignores that its 2022 revenue was £20.9 billion, almost five times that of PAN.  Yu Decl., Ex. 2 at 3; *see Tambaga*, 2020 WL 4673907 at *3 (D. Del. Aug. 12, 2020) ("Determining convenience of the parties requires the Court to consider: . . . (3) the *relative* ability of each party to bear the costs.") (emphasis added).  Accordingly, BT is plainly capable of litigating this case in California and PAN should not be forced to shoulder the additional burden.

---

[5] In the *Selective Signals, LLC v. Palo Alto Networks, Inc.* case where PAN stipulated to transfer to this District, PAN first moved to transfer the case from Texas to Northern District of California. No. 17-CV-00065, D.I. No. 17 (E.D. Tex. July 14, 2017).

Because there is no dispute that the Northern District of California is significantly more convenient for PAN, and because BT does not derive any material convenience from litigating in Delaware, this factor strongly favors transfer.

### 5. Factor 5: Convenience for Witnesses

The only third-party witnesses identified by the parties are the three inventors of the asserted patents—two living in California, and none in Delaware.  Therefore, this factor at least slightly favors transfer.  *ZapFraud, Inc.*, 2020 WL 4336058, at *6 ("But with some number of possible third-party witnesses located in the proposed transferee district and none in Delaware, the Court finds that this factor should at least weigh slightly in favor of transfer.").

BT argues that it would be more convenient for one of the inventors, Mr. Schneier, to travel from his Massachusetts residence to Delaware than to California.  Opp. at 16.  But Mr. Schneier is likely well-compensated by BT for his involvement in this case.  *See* D.I. 24, Wang, Decl., Ex. 21 at 4-6 (BT's initial disclosure in the *Fortinet* litigation identifying Mr. Schneier as BT's consultant).  Therefore, Mr. Schneier's availability in either forum carries little weight.  *Affymetrix, Inc. v. Synteni, Inc.*, 28 F. Supp. 2d 192, 203 (D. Del. 1998) ("[W]itnesses who are retained by a party to testify carry little weight in determining where the "balance of convenience" lies (especially in an action for patent infringement) because they '. . . are presumably well compensated for their attendance, labor and inconvenience, if any.'").

### B. The Public Interest Factors Strongly Favor Transfer

### 1. Factor 7: BT's Argument Regarding Enforceability of Judgment is Irrelevant and Speculative

BT argues that it "is likely" to discover other liable PAN affiliates which "may not be" subject to personal jurisdiction in Northern California.  Opp. at 16.  The speculative existence of PAN subsidiaries incorporated in Delaware is irrelevant. PAN is the only defendant in this case.

The case BT cites (Opp. at 16-17) to support its argument fails because, in that case, the Kansas court lacked personal jurisdiction over a named defendant, and not some speculative, unnamed subsidiary as is BT's contention here.  *See* Opp. at 17 ("Delaware was favored over Kansas '[b]ecause the [Kansas court] lacks personal jurisdiction over [***defendant***].'") (quoting *Sprint Commc'ns, L.P. v. Commc'ns, Inc.*, 896 F. Supp. 2d 1049, 1066 (D. Kan. 2012)) (emphasis added).

**2.      Factor 8: Litigation Efficiency Does Not Weigh Against Transfer**

BT proffers two arguments as to why litigation efficiency weighs against transfer.  Both without merit.  First, BT argues that under *Pragmatus*, the *Fortinet* claim construction order promotes efficiency in this case.  Opp. at 17 (citing *Pragmatus AV LLC v. Yahoo! Inc.*, No. CIV. 11-902-LPS-CJB, 2012 WL 4889438, at *12 (D. Del. Oct. 15, 2012), *report and recommendation adopted*, No. CA 11-902-LPS-CJB, 2013 WL 174499 (D. Del. Jan. 16, 2013)).  But *Pragmatus* involves different facts.  There, the plaintiff asserted overlapping patents against two defendants in co-pending litigations in front of two different Delaware judges.  *Pragmatus*, 2012 WL 4889438, at *12.  Both defendants then filed "nearly identical" motions to dismiss their respective case.  *Id.*  The court noted that denying transfer allows it to review the other judge's decisions on "a similar motion, involving . . . identical arguments."  *Id.*  Whereas here, the parties have not filed their claim construction briefs and there is no reason to believe that PAN will pursue "identical arguments" as Fortinet's.  Indeed, PAN is not bound by the *Fortinet* claim construction order and may seek alternative constructions.

Second, BT argues that it would be inefficient to transfer this case because PAN moved to dismiss BT's complaint.  Opp. at 17.  BT's reliance on *Pragmatus* is again inapposite.  There, the court had entered a scheduling order, the parties had started discovery, and proposed construction of claim terms were soon to be exchanged.  *Pragmatus*, 2012 WL 4889438, at *13.  None has occurred here.  BT cites no authority where the court found that a single pending motion to dismiss

weighs against transfer.  Indeed, this Court has routinely granted motions to transfer while a motion to dismiss is pending.  *See, e.g.*, *McRo, Inc. v. Activision Blizzard, Inc.*, No. CV 12-1508-LPS-CJB, 2013 WL 6571618, at *1 (D. Del. Dec. 13, 2013), *report and recommendation adopted*, No. CV 12-1508-LPS-CJB, 2013 WL 6869866 (D. Del. Dec. 30, 2013); *Fortinet, Inc. v. FireEye Inc.*, 944 F. Supp. 2d 352, 353 (D. Del. 2013).

### 3. Factor 9: BT Does Not Dispute that This Court Has a Heavier Caseload than Northern District of California

BT does not dispute that this Court has almost four times more open cases than the Northern District of California.  Mot. at 15.  This is compounded by the fact that this District currently only has 8 district and magistrate judges, whereas there are 33 district and magistrate judges in the transferee district.  Therefore, this factor favors transfer.  *Allen Med. Sys, Inc.*, 2022 WL 1046258, at *3 (finding that this factor favors transfer under similar circumstances).

### 4. Factor 11: Public Policy of the Fora is Neutral

Courts generally give this factor minimal weight.  *Intell. Ventures I LLC v. Altera Corp.*, 842 F. Supp. 2d 744, 760 (D. Del. 2012).  BT does not dispute that this factor "generally applies to the use of Delaware's state courts."  Mot. at 15 (quoting *Express Mobile, Inc. v. Web.com Grp., Inc.*, No. 19-CV-1936-RGA, 2020 WL 3971776, at *5 (D. Del. July 14, 2020)).  Moreover, while this District has an interest in resolving litigations involving entities incorporated in Delaware, the District of California has a similar interest regarding corporations with their principle places of business there.  *Illumina, Inc. v. Complete Genomic, Inc.*, No. CIV.A. 10-649, 2010 WL 4818083, at *5 (D. Del. Nov. 9, 2010) ("The Court notes that while Delaware has an interest in this litigation which involves corporations incorporated there, California also has a similar interest regarding its corporate citizens.") (internal citation omitted).  Thus, this factor is neutral.

### C.   The Court Should Deny BT's Alternative Motion for Venue-Related Discovery

This Court has denied a similar motion for venue-related discovery in *McRo*, 2013 WL 6571618.  There, the Court observed that there existed no case "where this Court has granted a motion seeking discovery solely to resolve a motion to transfer venue."  *Id.* at \*14.  The same is true here.  BT cites a 1970 case where the Third Circuit vacated the Pennsylvania district court's order postponing consideration of the defendant's transfer motion until after ***all discovery*** is completed.  *McDonnell Douglas Corp. v. Polin*, 429 F.2d 30, 30 (3d Cir. 1970).  The Third Circuit held that the district court's order was overreaching, and limited the scope of discovery to the transfer motion.

Moreover, "and perhaps most importantly," the record provides a sufficient basis for the Court to grant this motion, and the additional information BT now seeks will not move the needle.  *McRo*, 2013 WL 6571618, at \*14. Particularly, the record is clear regarding "the location of [PAN's] design or development activity, and that none of that activity occurred in Delaware."  *Id.* (holding that it is "highly unlikely that [the plaintiff] could alter the balance of certain private interest *Jumara* factors, even if it were granted such discovery.").

## III.   CONCLUSION

PAN respectfully requests that the Court transfer this case to the Northern District of California.

Dated:  April 10, 2023

Respectfully submitted,

FARNAN LLP

*/s/ Brian E. Farnan*
Brian E. Farnan (#4089)
Michael J. Farnan (#5165)
919 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 777-0300
bfarnan@farnanlaw.com
mfarnan@farnanlaw.com

Adrian C. Percer (admitted *pro hac vice*)
Weil, Gotshal & Manges LLP
201 Redwood Shores Parkway
Redwood Shores, CA 94065
Telephone: (650) 802-3000
adrian.percer@weil.com

Anish R. Desai (admitted *pro hac vice*)
Tom Yu (admitted *pro hac vice*)
Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153
Telephone: (212) 310-8000
anish.desai@weil.com
tom.yu@weil.com

Priyata Y. Patel (admitted *pro hac vice*)
Weil, Gotshal & Manges
2001 M Street, NW Suite #600
Washington, D.C. 20036
Telephone: (202) 682-7000
priyata.patel@weil.com

*Attorneys for Defendant*