# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| BRITISH TELECOMMUNICATIONS PLC and BT AMERICAS, INC., <br><br> Plaintiffs, <br><br> v. <br><br> PALO ALTO NETWORKS, INC., <br><br> Defendant. | C.A. No. 22-1538-CJB <br><br> **JURY TRIAL DEMANDED** |

### REPLY BRIEF IN SUPPORT OF DEFENDANT'S
### MOTION TO DISMISS UNDER RULE 12(b)(6)

Dated: April 10, 2023

Brian E. Farnan (Bar No. 4089)
Michael J. Farnan (Bar No. 5165)
FARNAN LLP
919 N. Market St., 12th Floor
Wilmington, DE 19801
(302) 777-0300
(302) 777-0301 (Fax)
bfarnan@farnanlaw.com
mfarnan@farnanlaw.com

Adrian C. Percer (admitted *pro hac vice*)
Weil, Gotshal & Manges LLP
201 Redwood Shores Parkway
Redwood Shores, CA 94065
Telephone: (650) 802-3000
adrian.percer@weil.com

Anish R. Desai (admitted *pro hac vice*)
Tom Yu (admitted *pro hac vice*)
Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153
Telephone: (212) 310-8000
anish.desai@weil.com
tom.yu@weil.com

Priyata Y. Patel (admitted *pro hac vice*)
Weil, Gotshal & Manges LLP
2001 M Street, NW Suite #600
Washington, D.C. 20036
Telephone: (202) 682-7000
priyata.patel@weil.com

*Attorneys for Defendant*

## TABLE OF CONTENTS

Page

I. INTRODUCTION ..................................................................................................................1

    A. The Claims Are Not Directed to an Improvement in Computer Functionality ..................................................................................................3

        1. The Representative Claim Is Directed to a Human Solution Rather Than the Requisite Technical Solution ............................................4

    B. BT Fails to Identify an Inventive Concept................................................................9

    C. There Are No Disputes Regarding Facts or Claim Scope Precluding Dismissal Under Section 101..................................................................................12

II. CONCLUSION.................................................................................................................14

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Ancora Techs. v. HTC Am., Inc.*,
 908 F.3d 1343 (Fed. Cir. 2018)..................................................................................................7

*Bascom Glob. Internet Servs., Inc. v. AT&T Mobility LLC*,
 827 F.3d 1341 (Fed. Cir. 2016)............................................................................................4, 11

*Beteiro, LLC v. BetMGM, LLC*,
 No. 1:21-cv-20156, 2022 WL 4092946 (D.N.J. Sept. 7, 2022)...............................................11

*CardioNet, LLC v. InfoBionic, Inc.*,
 955 F.3d 1358 (Fed. Cir. 2020)......................................................................................3, 6, 12

*Cellspin Soft, Inc. v. Fitbit, Inc.*,
 927 F.3d 1306 (Fed. Cir. 2019)...............................................................................................11

*CG Tech. Dev., LLC v. FanDuel, Inc.*,
 442 F. Supp. 3d 840 (D. Del. 2020), aff'd, 858 F. App'x 363 (Fed. Cir. 2021).........................7

*Cisco Sys., Inc. v. Uniloc 2017 LLC*,
 813 F. App'x 495 (Fed. Cir. 2020) ............................................................................................7

*ClearDoc, Inc. v. RiversideFM, Inc.*,
 No. 21-cv-1422, 2022 WL 606698 (D. Del. Feb. 22, 2022)......................................................7

*Coop. Ent., Inc. v. Kollective Tech., Inc.*,
 50 F.4th 127 (Fed. Cir. 2022) .................................................................................2, 9, 10, 11

*DiStefano Pat. Tr. III, LLC v. LinkedIn Corp.*,
 346 F. Supp. 3d 616 (D. Del. 2018), *aff'd*, 784 F. App'x 785 (Fed. Cir. 2019) ......................14

*Dropbox, Inc. v. Synchronoss Techs., Inc.*,
 815 F. App'x 529 (Fed. Cir. 2020) ..........................................................................................12

*Elec. Power Grp., LLC v. Alstom S.A.*,
 830 F.3d 1350 (Fed. Cir. 2016)..........................................................................................4, 13

*Evolusion Concepts, Inc. v. HOC Events, Inc.*,
 22 F.4th 1361 (Fed. Cir. 2022) ...........................................................................................3, 13

*F45 Training Pty Ltd. v. Body Fit Training USA Inc.*,
 No. 20-cv-1194, 2021 WL 2779130 (D. Del. July 2, 2021)....................................................12

*Gottschalk v. Benson*,
　409 U.S. 63 (1972)..................................................................................................1, 4

*Gracenote, Inc. v. Free Stream Media Corp.*,
　2019 U.S. Dist. LEXIS 213416 (D. Del. 2019) ...........................................................7

*ICON Health & Fitness, Inc. v. Polor Electro Oy*,
　243 F. Supp. 3d 1229 (D. Utah. 2017)..........................................................................9

*Realtime Data LLC v. Array Networks Inc.*,
　556 F. Supp. 3d 424 (D. Del. 2021).....................................................................1, 3, 7

*RICPI Commc'ns LLC v. JPS Interoperability Sols., Inc.*,
　No. 18-cv-1507, 2019 WL 1244077 (D. Del. Mar. 18, 2019)....................................11

*In re Rosenberg*,
　813 F. App'x 594 (Fed. Cir. 2020) ...............................................................................8

*SRI Int'l, Inc. v. Cisco Sys, Inc.*,
　930 F.3d 1295 (Fed. Cir. 2019)....................................................................4, 6, 7, 13

*SynKloud Techs., LLC v. HP Inc.*,
　490 F. Supp. 3d 806 (D. Del. 2020)............................................................................11

*Synopsys, Inc. v. Mentor Graphics Corp.*,
　839 F.3d 1138 (Fed. Cir. 2016)....................................................................................3

*TecSec, Inc. v. Adobe Inc.*,
　978 F.3d 1278 (Fed. Cir. 2020)...........................................................................2, 6, 8

*Thales Visionix Inc. v. U.S.*,
　850 F.3d 1343 (Fed. Cir. 2017)....................................................................................7

*TrackTime, LLC v. Amazon.com, Inc.*,
　No. 18-cv-1518, 2019 WL 2524779 (D. Del. June 19, 2019) ...................................14

*Twilio, Inc. v. Telesign Corp.*,
　249 F. Supp. 3d 1123 (N.D. Cal. 2017) .......................................................................8

*Ubisoft Ent.,S.A. v. Yousician Oy*,
　814 F. App'x 588 (Fed. Cir. 2020) .............................................................................12

**I.      INTRODUCTION**

The Court should find that the asserted patents are ineligible and reject BT's arguments to the contrary because the patents are (1) directed to the abstract idea of collecting, filtering, analyzing, and transmitting data, and then making modifications based feedback; and 2) fail to recite any inventive concept. The patents "solve" the purported problem in the prior art—the inability of automated systems to handle intelligent threats—by conscripting human analysts. This is not a technical solution to a technical problem, but a resort to mental processes. This is insufficient to convey patentability.

At *Alice* step 1, BT asserts that the representative claim[1] is directed to a novel, computer architecture that BT contends amounts to an improvement to computer functionality. The patent expressly states, however, that the claimed advance is not some novel, new computer architecture, but rather the incorporation of human analysts whose function it is to analyze residual data. Moreover, claims directed to improvements to computer functionality must be "genuinely directed to technical problems inherently grounded in computer technology and…***offer[] specific technical solutions***" rather than human solutions.[2] *See, e.g.*, *Realtime Data LLC v. Array Networks Inc.*, 556 F. Supp. 3d 424, 436 (D. Del. 2021); *see cf. Gottschalk v. Benson*, 409 U.S. 63, 67 (1972) ("[M]ental processes, and abstract intellectual concepts are not patentable[.]"). While BT attempts to characterize the solution as a "specific, multi-tier structural computer and network architecture" (D.I. 19 at 1), the only solution that the "patent asserts to be the focus of the claimed advance over

---

[1] BT does not dispute that claim 18 of the '237 Patent is representative of independent claims 1 and 26 of the '237 Patent and independent claim 1 of the '641 Patent. The Complaint presents allegations of infringement for independent claim 1 of the '237 Patent and independent claim 1 of the '641 Patent. D.I. 1, ¶¶ 40-64, 69-92.

[2] Emphasis added unless otherwise indicated.

1

the prior art" is a **human solution** rather than a technical solution (*TecSec, Inc. v. Adobe Inc.*, 978 F.3d 1278, 1292 (Fed. Cir. 2020) (internal quotations omitted)).  The specification states that the advance is "a monitoring, detection and response system that *employs human intelligence*," and goes so far as to eschew technical solutions, concluding that "automatic defenses…work against automated attacks," but "they are at a disadvantage against an intelligent attack[.]"  '237 Patent, 1:33-43.  Indeed, the specification and claims do not disclose any specific technical solution for how the computer analyzes data, confirming that the invention is directed to a human solution, not a technical solution.  *Id*. at 8:45-59 (generically describing that a probe performs negative filtering, positive filtering, and residue analysis that "are examples of data discrimination analyses…which are well-known to those skilled in the art").  Incorporating a human to do what a computer cannot does not amount to a specific technical solution and therefore does not survive step 1.

At *Alice* step 2, BT does not meaningfully dispute that the claimed computer components are generic or that the claims recite conventional, well-known concepts of filtering and analyzing data.  BT also does not identify what "element or combination of elements [in the claims] is sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself."  Nor could it because the claims recite a generic probe performing the routine computer functionalities of filtering and analyzing data, and merely introduce a human to conduct review of the data and provide feedback.  BT's reliance on the CAFC's decision in *Coop. Ent., Inc. v. Kollective Tech., Inc.*, 50 F.4th 127 (Fed. Cir. 2022) is misplaced.  D.I. 19 at 19-20.  In *Coop.*, the claim recited "a *specific type of content-sharing network*" and "[t]he specification explain[ed] how claim 1's dynamic P2P network structure is different from and improves upon the prior art, *especially the structural limitation that the peer nodes consuming the same content be distributed outside a controlled network or a CDN*[.]"  *Id*. at 132.  In contrast, BT's claims recite

conventional network components and the specification proclaims that the claimed advance is the incorporation of humans to review data. '237 Patent, 1:33-43; *see also id* 10:41-11:3 ("FIG. 5 is a flowchart showing an exemplary implementation of incident handling by a security analyst. . . . In step 505, the security analyst picks up the ticket, and in step 510, he or she beings to investigate it. . . . By knowing the vulnerability, a security analyst should be able to properly respond to the customer[.]").

Finally, BT contends that disputes regarding claim scope and whether the representative claim recites an improvement in computer functionality are factual disputes that preclude dismissal. But PAN does not dispute any claim scope for the purposes of this motion. Regardless, questions of claim scope and whether a claim recites an improvement to computer functionality are legal questions. *CardioNet, LLC v. InfoBionic, Inc.*, 955 F.3d 1358, 1372 (Fed. Cir. 2020); *Evolusion Concepts, Inc. v. HOC Events, Inc.*, 22 F.4th 1361, 1365 (Fed. Cir. 2022).

Therefore, PAN respectfully requests that the Court dismiss the complaint.

### A.     The Claims Are Not Directed to an Improvement in Computer Functionality

The representative claim is directed to the abstract idea of collecting, filtering, analyzing, and transmitting data, and then making modifications based on human feedback. BT does not materially dispute that the representative claim is directed to each of these abstract ideas. *See* D.I. 19 at 15. BT, however, repeatedly attempts to characterize the claims as directed to a "multi-tier computer and network architecture." *Id.* at 1. But this alleged "architecture" is nothing more than the use of a generic probe to collect, filter and analyze data, and then send data to a **human for review and feedback**. Claims that survive step 1 because they are directed to an improvement to computer functionality are claims that "were genuinely directed to technical problems inherently grounded in computer technology *and that offered specific technical solutions*." *Realtime Data*, 556 F. Supp. 3d at 436-437; *Synopsys, Inc. v. Mentor Graphics Corp.*, 839 F.3d 1138, 1152 (Fed.

3

Cir. 2016) ("The Asserted Claims, in contrast to those at issue in *DDR Holdings* and *BASCOM*, contain no such technical solution."). Indeed, it is fundamental law that "mental processes, and abstract intellectual concepts are not patentable[.]" *Gottschalk*, 409 U.S. at 67; *Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1355 (Fed. Cir. 2016) ("[M]erely selecting information…for collection, analysis, and display does nothing significant to differentiate a process from ***ordinary mental processes, whose implicit exclusion from § 101 undergirds the information-based category of abstract ideas***."). A claim directed to the abstract idea of collecting, filtering, analyzing, and transmitting data, and then making modifications based on human feedback, cannot survive step 1 by claiming yet another abstract idea—the solution of incorporating a human to perform a mental process. Accordingly, the cases BT relies on, in particular *SRI Int'l, Inc. v. Cisco Sys, Inc.*, 930 F.3d 1295 (Fed. Cir. 2019), are distinguishable because, unlike in those cases, the patents here assert that the claimed advance is a human solution rather than a specific technical solution.

        **1.**        **The Representative Claim Is Directed to a Human Solution Rather Than the Requisite Technical Solution**

Rather than recite a technical solution to a technical problem, as required under step 1, the representative claim here recites a ***human solution*** to a problem purportedly present in conventional methods. Tellingly, BT's opposition avoids any detailed discussion of the specification, which clearly describes the invention as a human solution.

The specification explains that "automatic defenses may work against automated attacks, [but] they are at a disadvantage against an intelligent attack[.]" '237 Patent, 1:39-43. Accordingly, the patent proposes "[a] monitoring, detection, and response system that ***employs human intelligence***, [and] ***uses trained personnel in the loop***[.]" *Id* at 1:34-36. The specification also describes how the invention provides a "managed security monitoring service" that involves

4

"security analysts" who review and analyze "tickets" for an incident to determine possible solutions, or escalate incidents that they are unable to solve. *Id.* at 1:50-59 ("a managed security monitoring service…alerts and transmits information about such activity to trained security analysts"), *id.* at 2:36-42 ("Security analysts are personnel specializing in the analysis of network attacks…would preferably pass background checks and be bonded to provide extra assurance for customers of the MSM service."), 10:56-59 ("Once an analyst (or security engineer) is capable of handling ticket, he or she determines…the symptoms, vulnerabilities and recommended solutions associated with the ticket."), 12:8-12 ("For problem resolution purposes, an incident may be escalated from security analysts to senior security analysts to security engineers and finally to the network intelligence and engineering organizations of the MSM service itself."), 12:49-53 ("Normally, a solution cannot be guaranteed within a specific time frame but, in a preferred embodiment, support personnel can represent that within a certain amount of time, the problem will either be resolved or escalated by bringing additional resources to bear."), 13:45-47 ("the analyst determines whether he or she can handle the ticket. If not, the ticket may be escalated to the next level").

The specification further demonstrates that the invention is ***not*** a technical solution regarding the filtering or analysis performed by the computer (*i.e.*, the probe). The probe is described as doing nothing more than positive/negative filtering and data analysis, which the specification concedes are well-known to those skilled in the art. *Id.* at 8:45-59. Indeed, BT does not dispute in its opposition that positive filtering, negative filtering, and data discrimination analyses were well-known in the art. Notably, the specification contends that a technical solution ***was purportedly not possible*** because conventional firewalls, authentication mechanisms, and encryption could "not be relied upon to work perfectly[.]" *Id.* at 1:13-22. It states that, "[w]hile

automatic defenses may work against automated attacks, they are at a disadvantage against an intelligent attack, against which is needed the kind of intelligent defense[—*i.e.*, human analysts—]offered by the present invention." *Id.* at 1:39-43. BT admits that a human solution is preferred over a technical solution because, unlike trained humans, the claimed "probe…has access to less information, and is thus ***more likely to generate a false positive.***" D.I. 19 at 11. According to BT, "[w]ere the system to rely solely on the probe to make decisions about novel security events, ***it could mischaracterize benign data as a threat or mischaracterize a threat as benign data***—clearly an undesirable and unacceptable result that would degrade the functionality of the network and the security system." *Id.* Turning to human analysts to do what BT contends computers could not is not a technical solution.

BT's reliance on *SRI* is therefore misplaced. Unlike the representative claim here that claims a human solution, the claimed solution in *SRI* relied on a specific, technical "technique—using a plurality of network monitors that each analyze specific types of data on the network and integrating reports from the monitors." *Id.* at 1303. Each of the other cases on which BT relies involved claims that were likewise directed to a technical or technological solution. *See TecSec,* 978 F.3d at 1295 (finding that claims were directed to technical solution because the "specification…proposes a solution in which '[a] secure method of labelling files or messages that are sent from a sending user to a receiving user over a network' is used 'in addition to cryptographic protection.'"); *CardioNet.*, 955 F.3d at 1358 (finding claims were directed to a technical solution because the claim "is directed to a device that detects beat-to-beat timing of cardiac activity, detects premature ventricular beats, and determines the relevance of the beat-to-beat timing to atrial fibrillation or atrial flutter, taking into account the variability in the beat-to-beat timing caused by premature ventricular beats identified by the device's ventricular beat

detector"); *Ancora Techs. v. HTC Am., Inc.*, 908 F.3d 1343 (Fed. Cir. 2018) (finding claims were directed to technical solution because the "asserted innovation of the patent relates to where the license record is stored in the computer and the interaction of that memory with other memory to check for permission to run a program that is introduced into the computer"); *Thales Visionix Inc. v. U.S.*, 850 F.3d 1343, 1348-1349 (Fed. Cir. 2017) (finding claims were directed to technical solution "that use[s] inertial sensors in a non-conventional manner to reduce errors in measuring the relative position and orientation of a moving object on a moving reference frame"); *Gracenote, Inc. v. Free Stream Media Corp.*, 2019 U.S. Dist. LEXIS 213416 (D. Del. 2019) (finding claims were directed to technical solution of "us[ing] a robust hash to organize a multi-dimensional video database").[3]

BT criticizes PAN for allegedly ignoring the so-called "inventiveness of the overall claimed architecture" and "focusing instead on individual components that the Patents did not purport to invent." D.I. 19 at 15. The Federal Circuit instructs that the "Step 1 'directed to'

---

[3] The representative claim is instead like the claims in other cases that this Court or the Federal Circuit have found distinguishable from *SRI* because they lack specificity. *Cisco Sys., Inc. v. Uniloc 2017 LLC*, 813 F. App'x 495, 498 (Fed. Cir. 2020) ("Unlike the claims in [*SRI*], claim 6 of the '522 patent broadly claims solving the problem of master stations potentially having inefficient antennas by choosing the station with the best antenna. The claim does not specify any particular metric or method for ranking. The entirety of the claim is simply the abstract idea and nothing more."); *ClearDoc, Inc. v. RiversideFM, Inc.*, No. 21-cv-1422, 2022 WL 606698, at *4 (D. Del. Feb. 22, 2022) ("In *SRI*, the claims recited 'a specific technique'…. In contrast, the technology recited in the '500 patent is all conventional. The elements that OpenReel claims "alter" the normal functioning of a phone are described generally—'trigger signal' and 'control signal'—and do not disclose a specific improvement to a communication protocol."); *see also CG Tech. Dev., LLC v. FanDuel, Inc.*, 442 F. Supp. 3d 840, 847 (D. Del. 2020), aff'd, 858 F. App'x 363 (Fed. Cir. 2021) ("Claim 6 is similar to the claims in *Electric Power*, not to those in *SRI International*. Like the *Electric Power* claims, claim 6 is directed to the combination of [ ] abstract idea processes. *Id.* Determining the location of a mobile gaming device, determining the game configuration associated with that location, and implementing that game configuration are each "independently abstract ideas that use computers as tools."); *see also Realtime Data LLC v. Array Networks Inc.*, 556 F. Supp. 3d 424, 437 (D. Del. 2021) ("But in my view, the line here is clear, and the asserted claims do not have the specificity required of a technical solution").

inquiry…ask[s] ***what the patent asserts to be the focus*** of the claimed advance over the prior art." *TecSec*, 978 F.3d at 1292 (internal quotations omitted). PAN therefore does not ignore the alleged "inventiveness of the overall claimed architecture," but rather looks to what the patent expressly asserts to be the focus of the claimed architecture—the incorporation of human analysts. It is BT who ignores and "disregard[s] elements of the claims at issue that the specification makes clear are important parts of the claimed advance in the combination of elements." *Id.* at 1296. Specifically, BT characterizes the incorporation of human analysts as an "[a]dditional benefit[] related to human resource problem[s]," which it contends "do not prevent the claimed architecture from being an improvement to computer network technology." D.I. 19 at 14 n.9. But as explained above, the patent makes clear that the incorporation of human analysts to review data and provide feedback is not merely an ancillary benefit, but rather the claimed advance over the prior art.

BT also argues that the cases cited by PAN do not describe whether optimizing a system using feedback is abstract, but merely use the word "feedback" or relate to optimizing tangentially. D.I. 19 at 18 n.13. BT wrongly states the holdings in these cases. Each of these cases supports the premise that "receiv[ing] feedback based on empirically derived information reflecting operation of said security monitoring system" and "modify[ing] an analysis capability of said probe…based on said received feedback," as recited in the representative claim, is an abstract idea. *See In re Rosenberg*, 813 F. App'x 594, 597 (Fed. Cir. 2020) (finding claimed method for "collect[ing] data from remote clinical trials, analyz[ing] that data at a central computer, and communicat[ing] the results through instructions for management of the clinical trial" was directed to the abstract idea of "deciding whether to fine-tune[—*i.e.*, optimize—]a given system….based on reviewing the system's performance data"); *Twilio, Inc. v. Telesign Corp.*, 249 F. Supp. 3d 1123, 1144 (N.D. Cal. 2017) (finding claims directed to "selecting the best [telephone message

8

routing] option based on separately-received feedback"—*i.e.*, optimizing routing based on feedback—is a "fundamental activity…long [] performed by humans" and "[a]s such, it is an abstract idea."); *ICON Health & Fitness, Inc. v. Polor Electro Oy*, 243 F. Supp. 3d 1229, 1232 (D. Utah. 2017) (finding claims directed to "three fundamental actions: (1) receiving information regarding physical characteristic(s)…. (2) evaluating, or determining a course of action based on, the characteristic(s); and (3) providing a notification of the evaluation/course of action[,]" were directed to abstract idea of "providing and using feedback based upon data gathered from subjects").

Accordingly, the Court should reject BT's argument that the claims are directed to an improvement to computer functionality and find that the representative claim is directed to an abstract idea under *Alice* step 1.

### B. BT Fails to Identify an Inventive Concept

BT is unable to identify an inventive concept that would transform the representative claim into patent-eligible subject matter. BT does not meaningfully dispute that the claimed computer components are generic or that the individual claim elements recite conventional, well-known, or generic concepts. Rather than identify a specific inventive concept, BT argues that the representative claim recites a "novel architecture," and relies principally on the CAFC's decision in *Coop.*, 50 F.4th 127 for support.[4] As already explained, the patent specification confirms that this alleged "computer architecture" is nothing more than the introduction of a human analyst to review data that the computer cannot. The *Coop* case is distinguishable.

---

[4] BT also implies that the representative claim cannot be abstract because the Accused Products advertise the same benefits that BT attributes to the patent. D.I. 19 at 20; *id.* at 12. PAN disputes that the Accused Products infringe the claims; regardless, any advertised benefits of the Accused Products have no bearing on whether the representative claim is directed to an abstract idea or claims a technical solution.

9

In *Coop.*, the Court denied the motion to dismiss because the patentee plausibly pled, consistent with the written description, that certain structural limitations that recited changes to prior art structures were tied to the alleged inventive improvement over the prior art. As explained by the CAFC, the "claimed system must contain at least one P2P dynamic network and one content delivery server[,] [t]he dynamic P2P network must include at least one trace route and a multiplicity of peer nodes, which the claim defines as nodes 'consuming the same content within a predetermined time' and configured to communicate with the dynamic P2P network…[and] [c]laim 1 further limits the structural and functional relationship between the P2P network and the content delivery server." *Id.* at 131. The "specification explain[ed] how…the structural limitation that peer nodes consuming the same content be distributed outside a controlled network" was different from the prior art, which "group[ed] peer nodes based on their simultaneous consumption of common content, such as a video or video game." *Id*. at 132. The Court found that both the complaint and specification explained how this specific structural change to the system allegedly resulted in the purported technical improvement over the art. *Id.*

In contrast, BT's allegations that the claimed advance is a novel **computer** architecture is inconsistent with the specification, which states that the claimed advance is the incorporation of human analysts to conduct review of data that the computers cannot accurately perform. *See* '237 Patent, 1:39-42 ("While automatic defenses may work against automated attacks, they are at a disadvantage against an intelligent attack, against which is needed the kind of intelligent defense offered by the present invention."). Moreover, unlike the claims in *Coop.*, the representative claim does not recite inventive structural limitations. BT does not dispute that probes and secure operations centers were known, or that the filtering and data analysis done at the probe was likewise well-known (as the specification admits). The claims also do not specify any

improvement in the manner in which data is communicated between a probe and the secure operations center, or the manner in which the probe is updated. Rather, the claims merely state the abstract concepts of transmitting data and updating the probe based on feedback (from a human).[5] *See Beteiro, LLC v. BetMGM, LLC*, No. 1:21-cv-20156, 2022 WL 4092946, at *9 (D.N.J. Sept. 7, 2022) ("Plaintiff's claims and allegations here lack any such specificity and detail. Instead, they describe conventional technology, conventionally applied, using 'broad, functional language.'"). Unlike in *Coop.*, "there are no specific allegations, or support in the specification, that demonstrate that any of the components are used in a specific, unconventional, or non-generic way." *SynKloud Techs., LLC v. HP Inc.*, 490 F. Supp. 3d 806, 824 (D. Del. 2020).

The other cases BT relies upon are likewise distinguishable. *Bascom Glob. Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1350 (Fed. Cir. 2016) (denying § 101 motion only because placement of a filtering tool "at a ***specific*** location," and configured in a ***particular way***, evidenced an inventive concept and because the record did not demonstrate that claimed "***specific*** method of filtering" had been ***conventional or generic***); *Cellspin Soft, Inc. v. Fitbit, Inc.*, 927 F.3d 1306, 1318 (Fed. Cir. 2019) (denying § 101 motion only because claims "recite a ***specific***, plausibly inventive way of arranging devices and using protocols ***rather than the general idea*** of capturing, transferring, and publishing data."); *RICPI Commc'ns LLC v. JPS Interoperability Sols., Inc.*, No. 18-cv-1507, 2019 WL 1244077, at *5 (D. Del. Mar. 18, 2019) (denying § 101 motion only after finding that specific, technical solution of "us[ing] a computer network instead of telephone lines for two-way radio communications both enables long distance communication and

---

[5] BT also argues that "[t]he architecture claimed in the independent claims" may well "enable[] the probes to correlate across probes in the [Group 3] dependent claims. D.I. 19 at 11; *see also id.* at 5. But, as explained in PAN's Opening Brief, the concept of correlating data is itself abstract, and BT does not dispute that.

11

makes that communication more accessible because it reduces the cost of the communication."); *F45 Training Pty Ltd. v. Body Fit Training USA Inc.*, No. 20-cv-1194, 2021 WL 2779130, at *4 (D. Del. July 2, 2021) (denying § 101 motion because patentee "plausibly contends that the claim, including its ***specific physical structure and function, amounts to something more than the practice of an abstract idea***, and that is the abstract idea of storing, sending, and retrieving information over a network.").

Therefore, the representative claim does not recite an inventive concept sufficient to transform the claims into patent-eligible subject matter.

### C. There Are No Disputes Regarding Facts or Claim Scope Precluding Dismissal Under Section 101

BT contends that PAN's motion rests on disputed material facts. D.I. 19 at 13-15. But the only example BT points to is PAN's argument that the representative claim is not directed to an improvement to computer functionality. The question of whether a claim is directed to an improvement to computer functionality is a step 1 inquiry, which is "a legal question that can be answered based on the intrinsic evidence." *CardioNet,* 955 F.3d at 1372. PAN's arguments therefore do not rest on disputed factual questions, but rather on disputed legal questions. And the Court need not and should not accept as true BT's legal conclusions as it would for factual allegations. *Ubisoft Ent.,S.A. v. Yousician Oy*, 814 F. App'x 588, 590 (Fed. Cir. 2020) ("We accept the complaint's factual allegations as true and draw all reasonable inferences in favor of the plaintiff, but we 'need not accept legal conclusions couched as facts or unwarranted inferences, unreasonable conclusions, or arguments.'"); *Dropbox, Inc. v. Synchronoss Techs., Inc.*, 815 F. App'x 529, 531 (Fed. Cir. 2020) (similar).

BT also contends, in two footnotes, that PAN's motion rests on disputes regarding claim scope, and contends that this "is yet another example of a factual dispute that necessitates rejecting

12

its motion[.]" D.I. 19 at 15 n.10; *see also id.* at 16 n.12. But there is no claim construction dispute regarding the term "probe" or "status data" that is relevant to this motion.[6] For the term "probe," there is no scope dispute—the representative claim requires "at least one probe," not various or multiple probes. Moreover, the dependent claims that require "cross-probe correlation" do not supply an inventive concept as they merely recite the abstract idea of correlating data. *See* D.I. 12 at 6, 21. The term "status data" is also irrelevant to the § 101 inquiry because the Federal Circuit has "treat[ed] collecting information, ***including when limited to particular content (which does not change its character as information***), as within the realm of abstract ideas." *Elec. Power Grp.*, 830 F.3d at 1353. Moreover, claim construction disputes that do not rely on extrinsic evidence are pure questions of law and do not amount to disputed facts, as BT incorrectly contends. *Evolusion Concepts*, 22 F.4th at 1365.

Finally, in its argument regarding factual disputes, BT contends that humans cannot take steps similar to those recited in the claim because the Federal Circuit has held that "the human mind is not equipped to detect suspicious activity" in computer networks in the way that cybersecurity technology does. *SRI*, 930 F.3d at 1304. But that case involved a different patent directed to a different invention. The patents here expressly state that systems administrators are mentally capable of taking the steps recited in the claims, but simply lack the ***time*** to do so. *See* '237 Patent, 1:25-28. And the solution proposed by the patents is to incorporate a human to

---

[6] Both terms were previously construed in the *Fortinet* litigation. The term "probe" was construed as "a component that collects data from one or more network components to which it is attached, filters or otherwise analyzes the data that has been collected, transmits noteworthy information, and receives feedback in order to update its capabilities of analysis." The term "status data" was construed as "data extracted from or generated about the traffic or system processing it that is informative as to the status of the network and its components." Neither construction is disputed for purposes of this motion, nor does BT identify how these constructions impact the § 101 issue.

13

conduct the analysis that the computer is purportedly not capable of doing automatically. *Id.* at 1:33-42, 2:35-39, 10:56-67, 13:44-62.

## II. CONCLUSION

PAN respectfully requests that the Court find that claims 1, 18 and 26 of the '237 Patent and claim 1 of the '641 Patent are invalid under § 101 and dismiss the Complaint. Although not necessary for dismissal of the complaint, PAN also requests that the Court find dependent claims 2-17, 19-25 and 27-42 of the '237 Patent and claims 2-17 of the '641 Patent invalid under § 101.[7]

Dated: April 10, 2023

Respectfully submitted,

FARNAN LLP

*/s/* Brian E. Farnan
Brian E. Farnan (#4089)
Michael J. Farnan (#5165)
919 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 777-0300
bfarnan@farnanlaw.com
mfarnan@farnanlaw.com

Adrian C. Percer (admitted *pro hac vice*)
Weil, Gotshal & Manges LLP
201 Redwood Shores Parkway
Redwood Shores, CA 94065
Telephone: (650) 802-3000
adrian.percer@weil.com

---

[7] BT's complaint includes allegations of infringement for independent claim 1 of the '237 Patent and independent claim 1 of the '641 Patent, and does not include any allegations of infringement for the dependent claims or claims 18-25 of the '641 Patent. BT has not pointed to a single allegation in the complaint that addresses how PAN's products infringe claims 18-25 of the '641 patent. The Court may dismiss the complaint under § 101 without addressing these unasserted claims. *See, e.g.*, *TrackTime, LLC v. Amazon.com, Inc.*, No. 18-cv-1518, 2019 WL 2524779, at *6 (D. Del. June 19, 2019) ("I am granting the motion to dismiss. I understand that there are additional claims of one of the patents that have not been asserted, and I am not addressing…those claims as they are not before me."); *DiStefano Pat. Tr. III, LLC v. LinkedIn Corp.*, 346 F. Supp. 3d 616, 619 n. 1 (D. Del. 2018), *aff'd*, 784 F. App'x 785 (Fed. Cir. 2019) ("[T]he unasserted claims are not a part of this action and thus, the Court's analysis is limited to the asserted claims.").

14

Anish R. Desai (admitted *pro hac vice*)
Tom Yu (admitted *pro hac vice*)
Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153
Telephone: (212) 310-8000
anish.desai@weil.com
tom.yu@weil.com

Priyata Y. Patel (admitted *pro hac vice*)
Weil, Gotshal & Manges
2001 M Street, NW Suite #600
Washington, D.C. 20036
Telephone: (202) 682-7000
priyata.patel@weil.com

*Attorneys for Defendant*

15