# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

BRITISH TELECOMMUNICATIONS PLC )
and BT AMERICAS, INC., )
                   )
          Plaintiffs, )
                   )      C.A. No. 22-01538-CJB
                   )
         v. )      **JURY TRIAL DEMANDED**
                   )
PALO ALTO NETWORKS, INC., )
                   )
          Defendant. )

## PLAINTIFFS' MOTION FOR RECONSIDERATION OF THE COURT'S JULY 14, 2023 RULING THAT THE ASSERTED PATENTS ARE DIRECTED TO AN ABSTRACT IDEA UNDER STEP ONE OF THE *ALICE* 35 U.S.C. §101 FRAMEWORK

OF COUNSEL:

Bart H. Williams
PROSKAUER ROSE LLP
2029 Century Park East
Suite 2400
Los Angeles, California 90067
310-557-2900
bwilliams@proskauer.com

Baldassare Vinti
Nolan M. Goldberg
PROSKAUER ROSE LLP
Eleven Times Square
New York, New York 10036
212-969-3000
bvinti@proskauer.com
ngoldberg@proskauer.com

Edward Wang
PROSKAUER ROSE LLP
1001 Pennsylvania Avenue NW
Suite 600
Washington, DC 20004
202-416-6800
ewang@proskauer.com

Dated: July 28, 2023

Philip A. Rovner (#3215)
Jonathan A. Choa (#5319)
POTTER ANDERSON & CORROON LLP
Hercules Plaza
P.O. Box 951
Wilmington, DE 19899
(302) 984-6000
provner@potteranderson.com
jchoa@potteranderson.com

*Attorneys for Plaintiff British Telecommunications plc and BT Americas, Inc.*

**TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION ................................................................................................. 1

II.   ARGUMENT ...................................................................................................... 3

      A.   The Order Clearly Erred by Omitting or Minimizing Express Claim
           Limitations. ............................................................................................... 3

           1.    Analyzing "Post-Filtering Residue" to Detect Ongoing Network Attacks
                or Intrusions in Real Time .......................................................... 4

           2.    "Cross-Probe Correlation" ......................................................... 5

      B.   The Order Erred by Adopting Claims 14 and 18 of the '237 Patent as
           Representative of All Claims. ................................................................... 7

           1.    The Order Clearly Erred as a Matter of Law by Dismissing BT's
                Meaningful Articulation of Claim Distinctions. ........................................ 7

      C.   The Order Results in Manifest Injustice and Irreconcilably Inconsistent
           Outcomes. ................................................................................................. 9

III.  CONCLUSION ................................................................................................. 10

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Accenture Global Serv's, GmbH v. Guidewire Software, Inc.*,
    728 F.3d 1336 (Fed. Cir. 2013)......................................................................................3, 5, 10

*AgroFresh Inc. v. Essentiv LLC*,
    2019 WL 2745723 (D. Del. July 1, 2019) ..................................................................................3

*Am. Axle Mfg., Inc.*,
    967 F.3d 1285 (Fed. Cir.2020)................................................................................................3, 4

*Ancora Techs., Inc. v. HTC Am., Inc.*,
    908 F.3d 1343 (Fed. Cir. 2018), *as amended* (Nov. 20, 2018)...................................................6

*Berkheimer v. HP Inc.*,
    881 F.3d 1360 (Fed. Cir. 2018)...................................................................................................8

*Cirba Inc. v. VMware Inc.*,
    2023 WL 2428716 (D. Del. Mar. 9, 2023) .................................................................................3

*Enfish, LLC v. Microsoft Corp.*,
    822 F.3d 1327 (Fed. Cir. 2016)...................................................................................................6

*Kroy IP Holdings, LLC v. Groupon, Inc.*,
    2018 WL 4905595 (D. Del. Oct. 9, 2018) ..................................................................................7

*Max's Seafood Cafe ex rel. Lou-Ann, Inc. v. Quinteros*,
    176 F.3d 669 (3d Cir. 1999).........................................................................................................3

*Pragmatus Telecom LLC v. Genesys Telecommc'ns Labs. Inc.*,
    114 F. Supp. 3d 192 (D. Del. 2015).............................................................................................7

*SRI Int'l, Inc. v. Cisco Sys., Inc.*,
    930 F.3d 1295 (Fed. Cir. 2019)..........................................................................................1, 2, 6

*TecSec, Inc. v. Adobe Inc.*,
    978 F.3d 1278 (Fed. Cir. 2020)..............................................................................................2, 5

*Uniloc USA, Inc. v. LG Elecs. USA, Inc.*,
    957 F.3d 1303 (Fed. Cir. 2020)..............................................................................................2, 6

## I.      INTRODUCTION

BT respectfully moves for reconsideration of the Court's July 14, 2023 finding (the "Order") that the claims of the Asserted Patents are directed to an abstract concept.[1]

First, in finding the claims abstract under *Alice* step one, the Order erred by elevating the specification over the express language of the claims reciting "analyzing post-filtering residue" and "cross-probe correlation" limitations.  Specifically, the Order found the claims abstract because the specification did not purportedly disclose the post-filtering residue and cross-probe correlation claim elements in a "fulsome manner" (Ex. 1 ("Hr'g Tr.") at 151:23-152:1), notwithstanding that the claims recited these elements expressly and the specification clearly describes them and identifies their importance.  *See, e.g.*, Complaint (Compl.), Ex. A, D.I. 1.01 ("'237 Patent"), at 2:3-12 (describing critical improvement of the claimed inventions over the prior art); *id.* at 5:29-32 (discussing cross-probe correlation); id. at 8:50-57 (describing post-filtering residue); *id.* at Claims 1, 14, 18, 26; Comp., Ex. B, D.I. 1.01 ("'641 Patent"), at Claims 1, 18.  Indeed, the Order's conclusion at *Alice* step two that these elements, when considered, "could contain a specific solution to a problem faced in the computer's network security field" supports a finding that that the claims are not abstract at *Alice* step one.  Hr'g Tr. at 153:9-14; *SRI Int'l, Inc. v. Cisco Sys., Inc.*, 930 F.3d 1295, 1303 (Fed. Cir. 2019).

As the Court itself noted, "reliance on the specification must always yield to the claim language in identifying what a claim is directed to, because the concern that derives the judicial exception to patentability is one of preemption."  Hr'g Tr. at 138:1-2.  The Order, however, placed greater importance on the amount of disclosure in the specification over the claim language itself.  By minimizing the post-filtering residue and cross-probe correlation claim

---

[1] "BT" is Plaintiffs British Telecommunications PLC and BT Americas, Inc.  The "Asserted Patents" are U.S. Patent Nos. 7,159,237 ("'237 Patent") and 7,895,641 ("'641 Patent").

language, the Order also failed to give proper weight to the fact that these elements disrupted prior art devices —a key *Alice* step one test. *See Uniloc USA, Inc. v. LG Elecs. USA, Inc.*, 957 F.3d 1303, 1308 (Fed. Cir. 2020); *SRI*, 930 F.3d at 1303; *TecSec, Inc. v. Adobe, Inc.*, 978 F.3d 1278, 1284 (Fed. Cir. 2020). *See e.g.,* Hr'g Tr. at 99:15-100:3; Compl. ¶ 38. (quoting Notice of Allowability at 4).

Second, the Order errs in adopting Claims 14 and 18 of the '237 Patent as representative of all Asserted Claims because those claims recite the use of an "analyst" in contrast to Claims 1-17 of the '641 Patent that recite the use of "an analyst system." An "analyst" – i.e., a human – is materially different than an "analyst system," which may or may not involve a human, but certainly does not expressly require one.  Despite bearing the legal burden to establish a claim as representative, PAN never attempted to explain (nor could it) how claims that require an "analyst" could be representative of those that required an "analyst system."  *See* D.I. 20.01 (coloring both analyst and analyst system limitations orange without any discussion).  BT never agreed with PAN's purported "representative" claim; to the contrary, it repeatedly called out in its briefing that certain claims require an "analyst system" rather than an "analyst."  *See* e.g., D.I. 19, at 3-4, 7, 10-11; D.I. 50, at 4; *see also* Hr'g Tr., at 84:1-85:15; *id.* at 100:23-101:1.

The Order's error in deeming claims reciting an "analyst" as representative of all claims materially affected the underlying findings in the Order.  For example, in finding the representative claims abstract, the Order relies on the participation of a human analyst multiple times.  Yet, the Order did not consider the "analyst system" claims, which do not expressly require a human analyst, despite BT identifying this limitation as important in its briefing and again at the hearing.

If left uncorrected, these errors individually and collectively result in a conclusion that is at odds with controlling Federal Circuit decisions, such as *SRI*.  For example, as established by BT

and acknowledged by the Order, the claims of the Asserted Patents and those in *SRI* are identical from a §101 perspective.  Hr'g Tr., at 149:8-155:6; D.I. 50, at 4.  Yet, one set of claims (those in *SRI*), were found to be directed to improving a network computer system and therefore not abstract, yet the other (those in the Asserted Patents) were found to be using the computer as a tool, and therefore abstract.

For these reasons and those set forth herein, BT respectfully requests that the Court find the Asserted Claims not abstract at *Alice* step one.

## II.   ARGUMENT

While "sparingly granted," motions for reargument under Local Rule 7.1.5 are available when, among other things, an order makes "clear error[s] of law or fact," "the Court has patently misunderstood a party," or "the Court has made an error not of reasoning but of apprehension." *Cirba Inc. v. VMware Inc.*, 2023 WL 2428716, at *1 (D. Del. Mar. 9, 2023) (citing *AgroFresh Inc. v. Essentiv LLC*, 2019 WL 2745723, at *1 (D. Del. July 1, 2019) and *Max's Seafood Cafe ex rel. Lou-Ann, Inc. v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999)).

### A.   The Order Clearly Erred by Omitting or Minimizing Express Claim Limitations.

The Order clearly erred as a matter of law by minimizing the import of the "cross-probe correlation" and "post-filtering residue" claim elements at *Alice* step one, finding that the specification did not disclose these elements in a "fulsome manner."  Hr'g Tr. at 151:23-152:1 ("… there are some references in the specification to these additional concepts in Columns 2, 3 and 8, but they're certainly not highlighted or described in a really fulsome manner."); *see also id.* at 138:13-21.  But it is the words of the claims that are the primary focus of the step one analysis, not the adequacy of the description in the specification.  *See Accenture Global Serv's, GmbH v. Guidewire Software, Inc.*, 728 F.3d 1336, 1345 (Fed. Cir. 2013) ("Regarding Accenture's

argument concerning the complexity of the specification . . . the important inquiry for a §101 analysis is to look to the claim."); *Am. Axle Mfg., Inc.*, 967 F.3d 1285 1302 (Fed. Cir.2020) ("Section 101 is concerned with whether the claims are directed to [an ineligible concept], not whether the specification has adequately described how to make and use the concretely claimed structures and steps."). The main requirement in patent law governing the amount of disclosure is enablement, which asks whether the "specification of a patent . . . teach[es] those skilled in the art how to make and use the full scope of the claimed invention." *Id.* (internal quotations omitted). Indeed, patent specifications with multiple embodiments tend to have short, concise description of each embodiment; but what matters for purposes of §101 is what the claimed embodiment is "directed to." And here, as discussed below, there are express statements in the specification (no matter the length) that discuss the importance of the minimized claim limitations, which should have been dispositive at *Alice* step one.

### 1. Analyzing "Post-Filtering Residue" to Detect Ongoing Network Attacks or Intrusions in Real Time

Independent Claims 1 and 18 of each of the Asserted Patents recite the analysis of "post-filtering residue" wherein "the post-filtering residue is data neither discarded nor selected by filtering." This residue is first analyzed at the probe (i.e., "filtering followed by an analysis of post-filtering residue") to "identify potentially security-related events represented in the status data." '237 Patent, Claims 1, 18, 26; '641 Patent, Claims 1, 18. Then "information about said[/the] identified events" is transmitted to an analyst or an analyst system for further review. '237 Patent, Claims 1, 18, 26; '641 Patent, Claim 1. The specifications of the Asserted Patents explain how these limitations are directed to solving a problem rooted in computer security. For example, the specification explains that "existing preventative security products" can "generate millions of lines of audit information each day," buried in which "may be the footprints of ongoing network attacks

or intrusions.   The MSM service can help filter and analyze all of that audit information in effectively real time to detect such attacks or intrusions."  '237 Patent, at 2:3-12.   ***Indeed, the Patent Examiner expressly found in the Notice of Allowance that the "post-filtering residue" element was a significant source of novelty in the claims.***  *See* Compl. ¶ 38. ("all data is filtered by intrusion detection, firewall, gateway, proxy, sensor, probe, or sentry, or some other type of device" such that "if an attack occurs the data is transmitted for further analysis" but "[a]ll other data is usually blocked or discarded." (alteration in original) (quoting Notice of Allowability at 4)).  The Order, however, erroneously determined at *Alice* step one that this element was not part of what the claims were "directed to."  Hr'g Tr. at 138:13-21 (finding that "it's, of course, true that Claim 18 and Claim 14 include . . . how the probe separately analyzes post-filtering residue . . . . But when one reads the patent, one sees that [the] post-filtering residue . . . concept[] [is] actually little mentioned in the specification.").  The Order thus committed clear legal error by elevating the specification over the works of the claims.  *See Accenture Global Serv's*, 728 F.3d at 1336; *Am. Axle*, 967 F.3d at 1302.

### 2.       "Cross-Probe Correlation"

The Order similarly prioritizes the amount of disclosure in the specification over the express claim language reciting the "cross-probe correlation" elements.  Hr'g Tr. at 138:13-140:2 (finding that "it's, of course, true that Claim 18 and Claim 14 include reference to . . . . the analysis of status data by way of cross-probe correlation" but determining the claims were not directed to this aspect of the claims on finding that there were only minimal references to cross-probe correlation in the specification).  Indeed, Claim 14 of the '237 Patent, which the Court found representative, is specifically directed to the concept of "cross-probe correlation."  *See* 5:29-32 ("The collected status data can either remain in the customer's hands or be provided to MSM service personnel for further analysis (e.g., cross-customer analysis).").

Therefore, the Order's step one conclusion erred by "overgeneralizing claims," having the effect of "characterizing the claims at a high level of abstraction that is untethered from the language of the claims." *TecSec*, 978 F.3d at 1292 (internal quotations omitted) (finding that "[t]o disregard [the recited] express claim elements is to proceed at 'a high level of abstraction' that is 'untethered from the claim language' and that 'overgeneraliz[es] the claim.'").

The Order also erred by not giving proper weight to the way in which these limitations result in the disruption of prior art devices – a key *Alice* step one test. *See Uniloc USA, Inc. v. LG Elecs. USA, Inc.*, 957 F.3d 1303, 1308 (Fed. Cir. 2020) (considering whether "the claimed invention changes the normal operation of the communication system itself to 'overcome a problem specifically arising in the realm of computer networks'"); *SRI*, 930 F.3d at 1303 (focusing on the "specific asserted improvement in computer capabilities" and whether the claims were "directed to solving [prior art] weaknesses in conventional networks"). As raised in BT's briefing (and at the hearing), but not considered during the step one analysis, the inventive devices do not operate in the same manner as prior art devices. *See e.g.,* D.I. 19 at 8-12; Hr'g Tr. at 99:15-100:3 ("… that's what you would expect to happen in the ordinary course. We disrupted that by now you're going to take this residue, and you're going to analyze two or three times at different locations and defined hierarchy for different things."). Significantly, the Order did acknowledge this during the step two analysis. Hr'g Tr. at 152:18-153:1. ("those systems were not using probes to then additionally further analyze …what the patents here describe as 'residue' data.")[2].

---

[2] The Order also acknowledges in its step two analysis that the "claims could contain a specific solution to a problem faced in the computer's network security field, and that the solution is at least significant, though not exclusively, rooted in computer technology." Hr'g Tr. at 153:9-14. This too supports a finding at the step one stage that the claims are not abstract. *See SRI*, 930 F.3d at 1303-04 ("claimed invention [was] directed to solving [prior art] weaknesses in

For the foregoing reasons, BT respectfully requests that the Court reconsider its findings

under *Alice* step one and find the Asserted Claims not to be directed to abstract subject matter.

> **B.      The Order Erred by Adopting Claims 14 and 18 of the '237 Patent as Representative of All Claims.**

The Order also erred by relying on Claims 14 and 18 of the '237 Patent as representative

of all claims in both Asserted Patents.  Although PAN had the burden to prove that claims are

representative, the Order committed clear error by placing the burden onto BT.  However, BT

never agreed to adopt PAN's alleged representative claims and never waived its position that

those claims are not representative of all Asserted Claims.  To the contrary, in its briefing, BT

expressly pointed out that certain claims required an "analyst system" rather than the "analyst"

(*i.e.*, a human) required by the purportedly representative claims.  *See* D.I. 19, at 3-4, 7, 10-11;

D.I. 50, at 4.  As a result of this material legal and factual error, the Order failed to properly

consider a material distinction in the Asserted Claims.

> **1.      The Order Clearly Erred as a Matter of Law by Dismissing BT's Meaningful Articulation of Claim Distinctions.**

PAN bore "the burden of proof to establish the exemplary nature of" a representative

claim. *Kroy IP Holdings, LLC v. Groupon, Inc.*, 2018 WL 4905595, at *10 n.7 (D. Del. Oct. 9,

2018).  Yet, PAN never even attempted to explain how claims that require an analyst could be

representative of those that required an "analyst system". *See, e.g.*, D.I. 12.01, at 4 (ignoring the

distinction by coloring in orange both the "analyst" of Claim 18 of the '237 Patent and "analyst

---

conventional networks and provide[d] 'a framework for the recognition of more global threats'"
(quoting *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1335-36 (Fed. Cir. 2016))); *see also*
*Ancora Techs., Inc. v. HTC Am., Inc.*, 908 F.3d 1343, 1348 (Fed. Cir. 2018), *as amended* (Nov.
20, 2018) ("Improving security . . . can be a non-abstract computer-functionality improvement if
done by a specific technique that departs from earlier approaches to solve a specific computer
problem.").

system" of Claim 1 of the '641 Patent). As a result, PAN failed to meet its burden. *See*

*Pragmatus Telecom LLC v. Genesys Telecommc'ns Labs. Inc.*, 114 F. Supp. 3d 192, 199-200 (D.

Del. 2015) (finding that defendants "have not demonstrated that the eight claims of the '314

patent are representative of the other three patents" because "[a]ll Defendants have done is

stated, in a conclusory fashion, that none of the other asserted claims . . . include 'any

meaningful limitation' that establishes patent eligibility."). While PAN failed to meet its burden

of establishing Claims 14 and 18 as representative of all Asserted Claims, the Order erroneously

placed the burden on BT to "explicitly dispute[]" that the claims were representative. Hr'g Tr. at

132:12-14.

   Critically, not only did BT never agree to PAN's representative claim analysis, it pointed

out in its briefing and at the hearing that Claims 1-17 of the '641 Patent required an "analyst

system" rather than an "analyst." *See* D.I. 19, at 3-4 (describing relevance of analyst system in,

for example, Claim 1 of the '641 Patent); *id.* At 7 ("…the effectiveness of pre-existing security

products, such as Firewall 1010, is improved by connecting them to a larger system, which

includes Probe 2000, PIPES 3000, and SOCRATES Problem and Expertise Management System

6000 at a SOC."); *id.* At 10 ("the claimed architecture… transmits the potential security events

identified by the probe to a SOC for further analysis by analysts or analyst systems (depending

on the claim in question)"); *id.* At 11 ("Moreover, whereas the analyst or analyst systems at the

SOC are well equipped to determine whether residual status data is benign or constitutes a threat

because of the broader access to information . . . , they are poorly equipped to process large

amounts of data."); D.I. 50, at 4 (comparing Claim 1 of the '641 Patent, which recites the analyst

system, to the claims in *SRI*); Hr'g Tr. At 84:1-85:15 ("Your Honor, and I would first start with

regard to the '641, Claim 1. It's an analyst system, not an analyst."); *id.* At 100:23-101:1 ("[I]n

the '641, we don't have an analyst.  We have an analyst system.  And I do believe we mentioned that in our briefing…").

Thus, the Order clearly erred in adopting Claims 14 and 18 of the '237 Patent as representative and disregarding the distinctive significance of the "analyst system."  *See Berkheimer v. HP Inc.*, 881 F.3d 1360, 1365-66 (Fed. Cir. 2018) (reversing district court's reliance on representative claim, finding that patentee did not waive arguments challenging claim as representative because it "maintained that limitations included in dependent claims 4-7 bear on patent eligibility and never agreed to make claim 1 representative.").

In adopting claims 14 and 18 of the '237 Patent as representative of all claims, the Order discusses the participation of a human analyst no less than thirteen times, relying on human involvement in the claims as a primary reason for finding them abstract at *Alice* step one.  *See, e.g.*, Hr'g Tr. At 142:25-143:11; 144:11-14; 144:21-145:2.  The error in finding claims 14 and 18 as representative of all claims is therefore material.

In view of the above, BT respectfully requests that the Court reconsider its decision finding claims 14 and 18 representative of all claims.

### C.    The Order Results in Manifest Injustice and Irreconcilably Inconsistent Outcomes.

If left uncorrected, the above legal and factual errors both individually and collectively result in a conclusion that is at odds with controlling Federal Circuit precedent, such as *SRI*.

As set forth in BT's July 11, 2023 Letter requested by the Court ("BT's Letter"), D.I. 50, at 2, Claim 1 of the '615 Patent (at issue in *SRI*) is not only facially analogous to Claim 1 of the '641 Patent, the '641 Patent indisputably has even more specificity that the '615.  D.I. 50, at pp. 2-3.  Indeed, the Order recited the elements of the representative claims of the Asserted Patents almost identically, but with more specificity, to those in *SRI*.  *Compare* Hr'g Tr. at 149:17-150:1

9

(recognizing that the claims in *SRI* involved three general steps: (1) "deploying more than one network monitor to detect suspicious activity"; (2) "having those monitors generate reports of suspicious activity"; and (3) "having those reports be received or integrated by one or more of the monitors."); *with id.* at 136:13-137:10 (characterizing the representative claims as reciting (1) a "tiered analysis" with a "positive and negative filter that selects or discards data" and a further analysis of "post-filtering residue" that has not been selected or discarded; (2) a "two level review process" involving a computerized analysis at the probe, followed by sending "information gleaned about potential security-related events" to a human analyst for further review"; and (3) "cross-probe correlation"); *see also* D.I. 50, at 2 (comparing Claim 1 of the '641 Patent to the claims in *SRI*).

Yet, one set of claims (those in *SRI*), were found to be directed to improving a network computer system and therefore not abstract, yet the other (those in the Asserted Patents) were found to be using the computer as a tool, and therefore abstract. Such different findings cannot be reconciled with the fact that the words of the claims appear functionally identical for §101 purposes, as shown in BT's Letter (D.I. 50), and as further discussed in Plaintiff's Opposition (D.I. 19, at 16-17). The only explanation for such an inconsistent result provided by the Order is reliance on the specification over the language of the claim. *Id*. at 151:16-18. ("unlike in *SRI* . . . the patent specification [did not] say a lot about the claim's [post-filtering residue or cross-probe correlation elements]."). As explained above, this runs afoul of Federal Circuit precedent. *See supra*, at 3-5 (citing *Accenture Global Serv's*, 728 F.3d at 1345; *Am. Axle*, 967 F.3d at 1302.

## III. CONCLUSION

BT respectfully requests that the Court grant BT's motion for reconsideration and find that the Asserted Claims are not directed to an abstract idea at *Alice* step one.

OF COUNSEL:

Bart H. Williams
PROSKAUER ROSE LLP
2029 Century Park East
Suite 2400
Los Angeles, California 90067
310-557-2900
bwilliams@proskauer.com

Baldassare Vinti
Nolan M. Goldberg
PROSKAUER ROSE LLP
Eleven Times Square
New York, New York 10036
212-969-3000
bvinti@proskauer.com
ngoldberg@proskauer.com

Edward Wang
PROSKAUER ROSE LLP
1001 Pennsylvania Avenue NW
Suite 600
Washington, DC 20004
202-416-6800
ewang@proskauer.com

Dated: July 28, 2023
10943458

POTTER ANDERSON & CORROON LLP

By:  */s/ Philip A. Rovner*
 Philip A. Rovner (#3215)
 Jonathan A. Choa (#5319)
 Hercules Plaza
 P.O. Box 951
 Wilmington, DE 19899
 (302) 984-6000
 provner@potteranderson.com
 jchoa@potteranderson.com

*Attorneys for Plaintiff British
Telecommunications plc and
BT Americas, Inc.*

11