IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| BRITHISH TELECOMMUNICATIONS PLC and BT AMERICAS, INC., <br><br> Plaintiffs, <br><br> v. <br><br> PALO ALTO NETWORKS, INC., <br><br> Defendant. | C.A. No. 22-1538 (CJB) <br><br> **JURY TRIAL DEMANDED** |

**DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION FOR RECONSIDERATION OF THE COURT'S JULY 14, 2023 RULING THAT THE ASSERTED PATENTS ARE DIRECTED TO AN ABSTRACT IDEA UNDER STEP ONE OF THE *ALICE* 35 U.S.C. § 101 FRAMEWORK**

Dated: August 21, 2023

Brian E. Farnan (Bar No. 4089)
Michael J. Farnan (Bar No. 5165)
FARNAN LLP
919 N. Market St., 12th Floor
Wilmington, DE 19801
(302) 777-0300
(302) 777-0301 (Fax)
bfarnan@farnanlaw.com
mfarnan@farnanlaw.com

Adrian C. Percer
Gregg T. Stephenson
Weil, Gotshal & Manges LLP
201 Redwood Shores Parkway
Redwood Shores, CA 94065
Telephone: (650) 802-3000
adrian.percer@weil.com

Anish R. Desai
Tom Yu
Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153

Telephone: (212) 310-8000
anish.desai@weil.com
tom.yu@weil.com

Priyata Y. Patel
Weil, Gotshal & Manges LLP
2001 M Street, NW Suite #600
Washington, D.C. 20036
Telephone: (202) 682-7000
priyata.patel@weil.com

*Attorneys for Defendant*

## TABLE OF CONTENTS

Page

I. INTRODUCTION ..................................................................................................................1

II. ARGUMENT ........................................................................................................................3

    A. The Court Did Not Clearly Err When Evaluating the "Cross-Probe Correlation" and Post-Filtering Residue" Claim Limitations ..................................3

    B. BT's New Argument That '237 Claims 14 and 18 Are Not Representative Has Been Waived and is Meritless ..........................................................................6

    C. The Court's Opinion is Consistent with Precedent ..................................................8

III. CONCLUSION .....................................................................................................................9

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Accenture Glob. Serv's, GmbH. V. Guidewire Software, Inc.*,
   728 F.3d 1336 (Fed. Cir. 2013) .................................................................................................4

*Am. Axle & Mfg., Inc. v. Neapco Holdings, LLC*,
   967 F.3d 1285 (Fed. Cir. 2020) .................................................................................................4

*In re Bd. of Trustees of Leland Stanford Junior Univ.*,
   991 F.3d 1245 (Fed. Cir. 2021) .................................................................................................5

*Berkheimer v. HP Inc.*,
   881 F.3d 1360 (Fed. Cir. 2018) .............................................................................................6, 7

*Bhatnegar v. Surrendra Overseas Ltd.*,
   52 F.3d 1220 (3d Cir. 1995) .....................................................................................................3

*CardioNet, LLC v. InfoBionic, Inc*,
   955 F.3d 1358 (Fed. Cir. 2020) ............................................................................................3, 4

*Ciena Corp v. Corvis Corp.*,
   352 F. Supp. 2d 526 (D. Del. 2005) .........................................................................................3

*Digital Image Tech., LLC v. Elec. for Imaging, Inc.*,
   758 F.3d 1344 (Fed. Cir. 2014) .................................................................................................5

*Enfish, LLC v. Microsoft Corp.*,
   822 F.3d 1327 (Fed. Cir. 2016) .................................................................................................4

*Free Stream Media Corp. v. Alphonso Inc.*,
   996 F.3d 1355 (Fed. Cir. 2021) .................................................................................................6

*Intell. Ventures I LLC v. Cap. One Fin. Corp.*,
   850 F.3d 1332 (Fed. Cir. 2017) .................................................................................................5

*Lazaridis v. Wehmer*,
   591 F.3d 666 (3d Cir. 2010) .....................................................................................................3

*Max's Seafood Café ex rel. Lou-Ann, Inc. v. Quinteros*,
   176 F.3d 669 (3d Cir. 1999) .....................................................................................................3

*SAP Am., Inc. v. InvestPic, LLC*,
   898 F.3d 1161 (Fed. Cir. 2018) .................................................................................................5

*SRI Int'l, Inc. v. Cisco Sys., Inc.*,
    930 F.3d 1295 (Fed. Cir. 2019)......................................................................................2, 8, 9

*TecSec, Inc. v. Adobe Inc.*,
    978 F.3d 1278 (Fed. Cir. 2020)......................................................................................1, 5, 6

*Trinity Info Media, LLC v. Covalent, Inc.*,
    72 F.4th 1355 (Fed. Cir. 2023) .................................................................................................5

*In re W.R. Grace & Co.*,
    398 B.R. 368 (D. Del. 2008)................................................................................................3, 7

**Statutes**

35 U.S.C. § 101............................................................................................................................1

**I.   INTRODUCTION**

The Court should deny British Telecommunications plc and BT Americas, Inc.'s (collectively, "BT") Motion for Reconsideration (D.I. 52) of the Court's July 14, 2023 ruling that U.S. Patent Nos. 7,159,237 ("'237 Patent") and 7,895,641 ("'641 Patent") (collectively, "the Asserted Patents") are directed to the abstract idea of "collecting, filtering, analyzing and transmitting data and then making modifications based on human feedback." Hr'g Tr. at 134:6-12.

First, BT contends the Court erred by omitting or minimizing the "post-filtering residue" and "cross-probe correlation" limitations. Not so. The Court expressly considered the claim language reciting "analyzing post-filtering residue" and "cross-probe correlation," and properly concluded that these elements do not save the claims from being directed to an abstract idea. The Court correctly determined that the claims "focus is on providing the two-level review process. One part computer based, one part human based." Hr'g Tr. at 138:19-142:9. The Court explained that residue analysis and cross-probe correlation are not what the "patent asserts to be the focus of the claimed advance over the prior art." *TecSec, Inc. v. Adobe Inc.*, 978 F.3d 1278, 1295 (Fed. Cir. 2020). Furthermore, even if the Court were to have determined the claims were directed to residue analysis and probe correlation, the residue analysis and correlation limitations are both abstract on their own. *See* D.I. 19 at 5, 11, 12; D.I. 31 at 2, 11; Hr'g Tr. at 134:10-12. The Court should reject BT's attempt to revisit arguments already presented and addressed.

Second, BT presents a new argument that independent claim 18 and dependent claim 14 of the '237 Patent are not representative because the '237 Patent claims an "analyst" while the '641 Patent claims an "analyst system." BT made no such argument in its briefs, which the Court can confirm with a cursory review of the portions of BT's briefs cited in its motion. D.I. 52 at 2, 7 (citing D.I. 19 at 3-4, 7, 10-11; D.I. 50 at 4). BT never argued that there is meaningful difference

between "analyst" and "analyst system;" nor could they, because it is a baseless argument. The two patents share the same specification, which explains that the invention involves transmitting the data to an SOC for a **human** to review. '641 Patent, 1:44-50, 1:59-2:2, 2:13-29. And that is exactly how BT described **both patents** in its Complaint. D.I. 1, ¶ 37. It makes no difference whether the claims recite transmitting to an "analyst" or an "analyst system"—they refer to the same concept. The Court should reject BT's new argument as both procedurally improper and without merit.

Third, BT presents the same arguments regarding *SRI* that the Court already thoroughly considered and addressed. BT repeatedly relied on *SRI*, citing *SRI* at least ten times in their Answering Brief, making no less than four mentions to *SRI* during their hearing arguments, and highlighting *SRI* as the topic of their letter to the Court. D.I. 19 at 1, 13, 14, 16, 17, 19; Hr'g Tr. at 84:4-10, 92:5-8, 100:5-25, 102:6-11; D.I. 50 at 1. The Court extensively evaluated *SRI*, discussing *SRI* expressly no less than thirteen times in its opinion, and asking no less than five questions concerning *SRI* during the motion hearing. Hr'g Tr. at 75:12-23, 78:16-18, 79:6-13, 100:11-17, 105:17-106:10, 149:8-22, 150:2-12, 151:2-22, 153:9-154:12, 155:7-14. Despite this intense scrutiny, BT improperly attempts to rehash these arguments. But BT's arguments are unavailing; the claims of the Asserted Patents, unlike those in *SRI*, are directed to the abstract idea because of "[u]s[ing] a computer to filter and analyze status data in a manner indistinguishable to how computers already do this and then use a human to further analyze status data and provide some feedback." Hr'g Tr. at 144:21-145:10.

For the above reasons discussed in greater detail below, the Court should deny BT's motion for reconsideration.

## II. ARGUMENT

Motions for reconsideration under Local Rule 7.1.5 are "sparingly granted," and only where necessary to "correct manifest errors of law or fact[.]" *Max's Seafood Café ex rel. Lou-Ann, Inc. v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999); *see also Lazaridis v. Wehmer*, 591 F.3d 666, 669 (3d Cir. 2010). Litigants "who fail in their 'first attempt to persuade a court to adopt its position may not use a motion for reconsideration either to attempt a new approach or correct mistakes it made in its previous one.'" *In re W.R. Grace & Co.*, 398 B.R. 368, 372 (D. Del. 2008). Likewise, litigants may not use a motion for reconsideration as a second bite at the apple to "rehash arguments which have already been briefed by the parties and considered and decided by the court." *Ciena Corp v. Corvis Corp.*, 352 F. Supp. 2d 526, 527 (D. Del. 2005); *Bhatnegar v. Surrendra Overseas Ltd.*, 52 F.3d 1220, 1231 (3d Cir. 1995).

### A. The Court Did Not Clearly Err When Evaluating the "Cross-Probe Correlation" and Post-Filtering Residue" Claim Limitations

BT alleges that the Court "clearly erred as a matter of law by minimizing the import of the 'cross-probe correlation' and 'post-filtering residue' claim elements at *Alice* step one, finding that the specification did not disclose these elements in a 'fulsome manner.'" D.I. 52 at 3. Not so. In performing the *Alice* step one analysis, the Court properly considered each limitation of the claim language, including the "correlation" and "residue" limitations, and evaluated them in light of the specification consistent with Federal Circuit precedent.

**First**, the Federal Circuit has made clear that "*Alice* step one presents a legal question that can be answered based on the *intrinsic evidence*." *CardioNet, LLC v. InfoBionic, Inc*, 955 F.3d 1358, 1372 (Fed. Cir. 2020).[1] In determining whether the claims are directed to an abstract idea,

---

[1] Emphasis added unless otherwise indicated.

3

"a court may well consult the plain claim language, written description, and prosecution history." *Id.* at 1372-73; *see also Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1335 (Fed. Cir. 2016) ("[T]he 'directed to' inquiry applies a stage-one filter to claims, *considered in light of the specification*, based on whether 'their character as a whole is directed to excluded subject matter.'").

Yet BT cites *Accenture Glob. Serv's, GmbH. V. Guidewire Software, Inc.*, 728 F.3d 1336 (Fed. Cir. 2013) and *Am. Axle & Mfg., Inc. v. Neapco Holdings, LLC*, 967 F.3d 1285 (Fed. Cir. 2020), arguing that *Alice* step one should not focus on the specification. D.I. 52 at 3-4. BT, however, mischaracterizes these cases. In both cases, the Federal Circuit extensively considered the patent specifications, but then concluded that the specifications were not sufficient to "transform a claim reciting only an abstract concept into a patent-eligible system or method." *See Am. Axle*, 967 F.3d at 1289, 1293, 1302; *Accenture*, 728 F.3d at 1342, 1345.

**Second**, BT argues that the Court "erred by elevating the specification over the express language of the claims" but then cites the specification to support the alleged "importance" of the residue and cross-probe correction limitations. D.I. 52 at 1, 4-5. Nevertheless, BT is wrong on both counts. As the Court correctly determined, the claims, viewed in the context of the specification, were not "directed to" post-filtering residue analysis or cross-probe correlation. Hr'g Tr. at 138:19-139:21.[2] Indeed, BT's motion does not present the Court with any relevant portions of the specification that were not already considered. For "post-filtering residue," BT

---

[2] BT also repeats the argument that the Notice of Allowance shows that the "post-filtering residue" element is a "source of novelty." D.I. 52 at 5. Novelty is not part of the *Alice* step one analysis and is not relevant here.

4

refers the Court to column 8, lines 50-57,[3] which the Court already considered. D.I. 52 at 1; Hr'g Tr. at 138:22-24 (noting "the only time the specification mentions the concept of analyzing post-filtering residue comes in Column 8"). For "cross-probe correction," BT merely quotes a sentence of the specification at column 5, lines 29-32, that refers to "cross-customer analysis," not "cross-probe correlation."[4] D.I. 52 at 5.

**Third**, BT relies on *TecSec,* for the assertion that the Court has "overgeneraliz[ed]" the claims at too "high level of abstraction." *See* 978 F.3d at 1293; D.I. 52 at 6. This is incorrect. The Court looked to the claim language and the associated description in the specification and concluded that the claims are directed to a two-level review involving collecting, filtering and analyzing data at the probe, and then transmitting to a human for further analysis and feedback. This recitation of what the claims are "directed to" aligns closely with the claim language. There is no requirement that the recitation of what the claims are "directed to" must include every limitation that is claimed.[5] Indeed, *TecSec* goes on to explain that in software cases, this inquiry

---

[3] Notably, in its citation to column 8, BT omits lines 58-59 that confirm filtering and residue analysis are "well-known to those skilled in the art."

[4] Even if the Court adopts BT's position that the claims are directed to "post-filtering residue analysis" and "cross-probe correlation," the claims would still be directed to an abstract idea. These two limitations simply recite the abstract ideas of analyzing and correlating data. *See e.g.*, *SAP Am., Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1167 (Fed. Cir. 2018) (claims focused on "selecting certain information, analyzing it using mathematical techniques, and reporting or displaying the results" are abstract); *Digital Image Tech., LLC v. Elec. for Imaging, Inc.*, 758 F.3d 1344, 1350 (Fed. Cir. 2014) (holding that patent claims were directed to an abstract idea because it "describes a process of organizing information through mathematical correlations and is not tied to a specific structure or machine.").

[5] *See Intell. Ventures I LLC v. Cap. One Fin. Corp.*, 850 F.3d 1332, 1339-41 (Fed. Cir. 2017) (finding claims directed to "collecting, displaying, and manipulating data" despite additional limitations, such as generating a "relational database" and detecting modification "via the user interface."); *Trinity Info Media, LLC v. Covalent, Inc.*, 72 F.4th 1355, 1362 (Fed. Cir. 2023) (finding claims directed to "matching based on questioning" despite additional limitations, such as a "networking system" and generating and comparing "unique user profile[s]."); *In re Bd. of*

5

"turns on whether the claims focus on specific asserted improvements in computer capabilities." 978 F.3d at 1293. As the Court correctly found in this case, the claims are not directed to "cross-probe correlation," nor is it an over-generalization of the claims to omit "cross-probe correlation" from the recitation of what the claims are "directed to."

Therefore, the Court properly determined that the claims are directed to "the general concept of filtering and analyzing status data and doing so via the two-level review process . . . having one computerized review process occur at the probe and then another human analyst based review process occur at the SOC." Hr'g Tr. at 140:3-9, 144:21-145:10.

> **B. BT's New Argument That '237 Claims 14 and 18 Are Not Representative Has Been Waived and is Meritless**

BT argues that the Court "erred by relying on Claims 14 and 18 of the '237 Patent as representative" and that "PAN had the burden to prove that claims are representative." D.I. 52 at 7. Specifically, BT contends that the '237 Patent claims are not representative of the '641 Patent because the former requires an "analyst," while the latter requires an "analyst system." *Id.*

**First**, BT failed to dispute PAN's position on representative claims and failed to dispute that the burden was met—thus, these arguments are now waived. *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1365 (Fed. Cir. 2018) ("Courts may treat a claim as representative in certain situations, such as ***if the patentee does not present any meaningful argument for the distinctive significance of any claim limitations*** not found in the representative claim.").

---

*Trustees of Leland Stanford Junior Univ.*, 991 F.3d 1245, 1250 (Fed. Cir. 2021) (finding claims directed to "mathematical calculations and statistical modeling" despite additional limitations, such as receiving and analyzing genetic data and comparing recombination rate between two individuals.); *Free Stream Media Corp. v. Alphonso Inc.*, 996 F.3d 1355, 1359-60, 1362 (Fed. Cir. 2021) (finding claims directed to "targeted advertising" despite additional limitations, such as correlating "fingerprint data with targeted data, based on a relevancy factor" and utilizes a "pairing server.").

6

PAN first explained why the '237 Patent's claim 18 may properly be used as representative in its Opening Brief. D.I. 12 at 5. BT did not discuss or challenge the representativeness in its Answering Brief, or propose alternative representative claims. *See generally,* D.I. 19. Indeed, BT is unable to point to any place in its briefs where it made any argument about "analyst" versus "analyst system," let alone a meaningful argument regarding distinctive significance. D.I. 52 at 2, 7, 8 (citing D.I. 19 at 3-4, 7, 10-11; D.I. 50 at 4). To the contrary, BT's Answering Brief (D.I. 19) treats "analyst" and "analyst system" the same. D.I. 19 at 10, 11. Moreover, BT cites their letter to the Court, D.I. 50, for support, but that letter does not mention "analyst" or "analyst system." D.I. 52 at 8 (citing D.I. 50 at 4).

PAN's Reply Brief proceeded based on the assumption that BT had agreed to the representativeness of claim 18. D.I. 31 at 1 n.1 ("BT does not dispute that claim 18 of the '237 Patent is representative of independent claims 1 and 26 of the '237 Patent and independent claim 1 of the '641 Patent.").

At the motion hearing, the Court correctly pointed to *Berkheimer* regarding representativeness and found that by not arguing against the representativeness of claim 18, BT had "essentially acknowledged" it was representative. Hr'g Tr. at 114:19-25; *see also Berkheimer*, 881 F.3d at 1365. And consistent with this, BT did not present any meaningful arguments for any claims beyond claims 14 and 18 of the '237 Patent.

Thus, despite ample prior opportunity to dispute the representativeness of claims 14 and 18, BT remained silent. BT cannot now use a motion for reconsideration to correct this mistake. *In re W.R. Grace & Co.*, 398 B.R. at 372 (litigants "who fail in their 'first attempt to persuade a court to adopt its position **may not use a motion for reconsideration either to attempt a new approach or correct mistakes it made in its previous one**.'").

**Second**, even if the Court were to entertain BT's new argument, BT would still lose the argument as there is no meaningful difference between "analyst" and "analyst system" for determining subject matter eligibility. As explained in PAN's Opening Brief, the independent claims of the Asserted Patents are "'substantially similar and linked to the same abstract idea' of collecting, filtering, and analyzing data and then transmitting information about that data to a human for feedback." D.I. 12 at 5. Moreover, the '237 Patent and '641 Patent share the same specification, which unambiguously describes the invention as involving the transmission of the data to a trained security analyst for review and feedback. '237 Patent, 1:33-42, 1:49-59, 2:3-20; '641 Patent, 1:44-53, 1:59-2:2, 2:13-29. It is of no moment whether that is referred to in the claims as transmitting the data to an "analyst" or an "analyst system." Either way, the data is being transmitted to a human for review and feedback. In fact, BT itself described ***both patents*** in its complaint as involving the transmission of data "to a secure operations center ('SOC') where analysts can further analyze the information." D.I. 1, ¶ 37. The Court should reject BT's belated argument that claim 18 is not representative because of a purported difference between "analyst" and "analyst system."

C. **The Court's Opinion is Consistent with Precedent**

BT argues that the Court's opinion is "at odds with controlling Federal Circuit precedent, such as *SRI*." D.I. 52 at 9. BT's desire to re-argue *SRI* is not a basis for a motion for reconsideration. The Court thoroughly evaluated *SRI* during the motion hearing and in its opinion, discussing *SRI* expressly no less than thirteen times in its opinion, and asking no less than five questions concerning *SRI* during the motion hearing. Hr'g Tr. at 75:12-23, 78:16-18, 79:6-13, 100:11-17, 105:17-106:10, 149:8-22, 150:2-12, 151:2-22, 153:9-154:12, 155:7-14. There can be no dispute that the Court comprehensively analyzed *SRI* and then subsequently articulated a

decision recognizing key distinctions between *SRI* and the instant case. The Court was fully mindful of precedence and issued a decision consistent with precedence.

BT's argument otherwise is wrong on the merits. As PAN explained in its briefing and the Court adopted, the Asserted Patents in the instant case are not directed as a technical solution. Hr'g Tr. at 144:15-145:10. In contrast, in *SRI*, the claimed solution relied on a specific and **technical** solution "using a plurality of network monitors that each analyze specific types of data on the network and integrating reports from the monitors." *SRI Int'l, Inc. v. Cisco Sys., Inc.*, 930 F.3d 1295, 1303 (Fed. Cir. 2019). The claims of the Asserted Patents are not aimed at such a technical solution, but instead, a "combination of a human solution and a computer-based solution." Hr'g Tr. at 144:17-21. As the Court succinctly summarized, "it's as if the patent simply said that it was claiming the following idea: Use a computer to filter and analyze status data in a manner indistinguishable to how computers already do this and then use a human to further analyze status data and provide some feedback on it, nothing more." *Id.* at 144:21-145:2. And as a further difference, the Court in *SRI* found that a human mind was not equipped to perform the functions of the claimed technology. Yet here, the Asserted Patents are specifically premised on a human's ability to perform the same analysis as the computer. Accordingly, the Court did not err in finding the claims of the Asserted Patents directed to an abstract idea under *Alice* Step one.

### III.   CONCLUSION

PAN respectfully requests that the Court deny BT's motion for reconsideration.

| | |
|---|---|
| Dated: August 21, 2023 | Respectfully submitted,<br><br>FARNAN LLP<br><br>*/s/ Brian E. Farnan*<br>Brian E. Farnan (#4089)<br>Michael J. Farnan (#5165)<br>919 North Market Street, 12th Floor<br>Wilmington, DE 19801<br>(302) 777-0300<br>bfarnan@farnanlaw.com<br>mfarnan@farnanlaw.com<br><br>Adrian C. Percer (admitted *pro hac vice*)<br>Gregg T. Stephenson (admitted *pro hac vice*)<br>Weil, Gotshal & Manges LLP<br>201 Redwood Shores Parkway<br>Redwood Shores, CA 94065<br>Telephone: (650) 802-3000<br>adrian.percer@weil.com<br><br>Anish R. Desai (admitted *pro hac vice*)<br>Tom Yu (admitted *pro hac vice*)<br>Weil, Gotshal & Manges LLP<br>767 Fifth Avenue<br>New York, NY 10153<br>Telephone: (212) 310-8000<br>anish.desai@weil.com<br>tom.yu@weil.com<br><br>Priyata Y. Patel (admitted *pro hac vice*)<br>Weil, Gotshal & Manges<br>2001 M Street, NW Suite #600<br>Washington, D.C. 20036<br>Telephone: (202) 682-7000<br>priyata.patel@weil.com<br><br>*Attorneys for Defendant* |