

1313 North Market Street
P.O. Box 951
Wilmington, DE 19899-0951
302 984 6000
www.potteranderson.com

Philip A. Rovner
Partner
Attorney at Law
provner@potteranderson.com
302 984.6140 Direct Phone

December 11, 2023

**VIA E-FILING AND HAND DELIVERY**

The Honorable Christopher J. Burke
J. Caleb Boggs Federal Building
844 N. King Street
Wilmington, DE 19801

      Re:    *British Telecommunications PLC, et al. v. Palo Alto Networks, Inc.*
             D. Del. C.A. No. 22-1538-CJB

Dear Judge Burke:

Plaintiffs British Telecommunications plc, and BT Americas, Inc. (collectively "BT") submit this letter in response to Defendant Palo Alto Network Inc.'s ("PAN") Letter Brief in Support of Its Motion to Stay Pending *Inter Partes* Review (D.I. 101) ("Motion").

Waiting five months after BT filed its complaint—and after PAN's Motion to Dismiss and Motion to Transfer were fully briefed—PAN filed requests for *inter partes* review ("IPR") of both patents named in the complaint. On November 17, 2023, the Patent Office denied institution of the IPR challenging U.S. Patent No. 7,159,237 (the "'237 Patent") and granted institution of the IPR challenging U.S. Patent No. 7,895,641 (the "'641 Patent"). Thereafter, PAN notified BT that it would be seeking a stay of the entire action pending resolution of the IPR on the '641 Patent ("the '641 IPR"). To avoid the delays and prejudice of such a stay, which could go on for years, BT filed a stipulation dismissing its claims relating to the '641 Patent from the case, with prejudice. Nevertheless, consistent with its prior efforts to avoid, and alternatively delay, proceeding before this Court, PAN seeks to stay this case even though the only remaining patent in this case, the '237 Patent, is not the subject of any IPR.[1] D.I. 104. PAN's position is wholly unsupported. Indeed, PAN fails to cite a single case where a court granted a stay because of a pending IPR on a patent that is not asserted in the underlying litigation. Nor does PAN agree not to assert the prior art from the IPR against the '237 Patent. Consequently, any efficiencies that could be gained from the IPR on the '641 Patent have already been had—BT has dismissed with prejudice its claims on the '641 Patent—yet PAN still tactically seeks to delay the litigation of a presumed valid patent for potentially years.

---

[1] PAN has refused to dismiss its counterclaims relating to the '641 Patent, but BT will be seeking dismissal of those moot counterclaims under existing precedent. In any event, in moving for a stay, PAN has not relied on its counterclaims.

This Court has typically considered three factors when deciding a motion to stay: "(1) whether granting the stay will simplify the issues for trial; (2) the status of the litigation, particularly whether discovery is complete and a trial date has been set; and (3) whether a stay would cause the non-movant to suffer undue prejudice from any delay, or allow the movant to gain a clear tactical advantage." *Contour IP Holding, LLC v. GoPro, Inc.*, No. CV 15-1108-LPS-CJB, 2016 WL 4474340, at *2 (D. Del. July 14, 2016).  These factors weigh heavily in favor of denying PAN's Motion.

**<u>The '641 IPR Will Not Simplify the Issues for Trial</u>**

The simplification of issues factor weighs heavily against a stay as the PTAB's decision regarding the '641 Patent will eliminate no issues for trial with respect to the '237 Patent.  This factor "depends in part upon the number of asserted claims . . . that would be at issue before the PTO." *Princeton Digital Image Corp. v. Konami Digital Entm't Inc.*, Nos. 12-1461-LPS-CJB, 13-335-LPS-CJB, 2014 WL 3819458, at *2 (D. Del. Jan. 15, 2014).  Here, *none* of the asserted claims from the '237 Patent are at issue in the '641 IPR.  The '641 Patent contains different claims[2].  Indeed, the same PTAB panel that instituted the '641 IPR on prior art grounds found that same art insufficient to even institute an IPR challenge against the '237 Patent. *See* D.I. 101, Ex. 1 at 35-44; *id.*, Ex. 2 at 31-36. Any decisions rendered by the PTAB will have no bearing on this litigation.

Moreover, even after resolution of the '641 IPR, issues concerning validity still will not be simplified vis-à-vis the '237 Patent.  Because the PTAB did not institute an IPR against the '237 Patent, the Court will still need to consider the same issues of validity concerning the '237 Patent that it would have had to consider in the absence of the '641 IPR.

Further, any claim construction by the PTAB is not binding on this Court and would be afforded no deference by the Federal Circuit on appeal.  In fact, to the extent PAN wants to argue that a construction by someone other than this Court is informative, both the '237 and '641 Patents were already construed by this District.[3]

Despite this lack of simplification, PAN's primary argument hinges solely on the supposed "substantial overlap" between the '237 Patent and the '641 Patent.  But "substantial overlap" is not a basis for granting a stay, especially where none of the asserted claims are at issue in the IPR.  Although PAN tries to argue that the similarities between the '641 Patent and '237 Patent render the '641 IPR informative as to the '237 Patent, whether something is informative is not

---

[2] BT disagrees with PAN's characterization of the parties' treatment of claims as "representative" across both patents. *See, e.g.,* D.I. 52 at 7.  Notably, the Patent Office also found a meaningful distinction between the claims of the '641 and '237 Patents as evidenced in its institution decisions.

[3] PAN previously attempted to downplay the impact of this District's preexisting claim constructions from the *BT v. Fortinet, Inc.*, No. 18-cv-1018 (D. Del. Aug. 5, 2021), litigation. *See* D.I. 28 at 8 ("the Fortinet claim construction order is not binding on this Court ").  Yet, in an effort to delay this litigation, PAN now seeks to emphasize the potential relevance of PTAB's similarly non-binding claim construction.

the legal standard for a stay. In fact, PAN cites to no case where this factor favored a stay merely because the IPR might be or was informative. Rather, all the cases cited by PAN for this factor simplified issues by *eliminating* at least some issues for trial. *See Speyside Medical, LLC v. Medtronic CoreValve LLC*, No. 20-361-CJB, D.I. 155 (D. Del. Sept. 30, 2021) (Oral Order); *360Heros, Inc. v. GoPro, Inc.*, No. 17-1302-CJB, D.I. 132 (D. Del. June 5, 2019) (Oral Order); *Princeton Digit.*, 2014 WL 3819458 at *2.

Critically, in each case PAN cites, the patents in the IPR continued to be asserted in the underlying case. As a result, in those cases at least some issues in the case would be eliminated for trial by the resolution of an IPR. Even where the courts in those cases stayed the case with respect to patents that were not instituted, the number of *asserted* claims (or patents) at issue in the IPR still outnumbered those not at issue in the IPR. Here, with the dismissal of BT's claims on the '641 Patent, *none of the asserted claims are actually at issue in the IPR*. For example, the court in *360Heros* found that the simplification of issues factor favored a stay, in part because "15 of the 25 asserted claims of the only patent-in-suit (and all of the independent claims of that patent) [were] at issue in the IPR." *360Heros*, D.I. 132. In *Speyside*, three of the five patents-in-suit were instituted. *Speyside*, No. 20-361-CJB, D.I. 155. And in *Princeton Digital*, the Court noted "a high percentage of . . . the asserted claims in at least the Ubisoft Action[] [were] potentially at issue before the PTO." *Princeton Digit.*, 2014 WL 3819458 at *2. On the other hand, this Court has found this factor to weigh against a stay—ultimately denying the stay—where "only a little over 50% of the 36 asserted claims [were] at issue in the PTAB." *Tonal Systems, Inc. v. iFIT Inc.*, No. 1-20-cv-01197, D.I. 188 (D. Del. Feb. 9, 2023) (Oral Order); *see also Toshiba Samsung Storage*, 193 F. Supp. 3d at 348-49 (concluding first factor weighed against a stay, in part, because "a much greater percentage of the [asserted] patent's claims that are now at issue here will *not* be at issue in the IPR proceeding") (emphasis in original).

So, quite unlike the case in *360Heros*, resolution of the '641 IPR would neither "eliminate a significant number of claims at issue in this case," nor "have a significant impact on the invalidity case as to all claims." *Id*. Moreover, there is no risk that any work done "could be wasted" in this case even if claims in the '641 Patent end up invalidated. *Cf. Speyside*, No. 20-361-CJB, D.I. 155. Nor are there any efficiencies that could be gained via estoppel from seeing the '641 IPR through first, as noted above. *Cf. id*.

Notably, the Court in *Speyside* actually "considered the prospect of permitting the case to move forward just as to those two patents" where institution had been denied. But, because neither side found that outcome agreeable, the Court "treat[ed] the Motion as an all-or-nothing proposition" and ultimately granted the stay. *Id*. Here, BT has dismissed with prejudice its claims with respect to the instituted patent.

In sum, the '641 IPR can in no way simplify the issues present in this litigation. PAN cannot rely on the PTAB's findings regarding validity of a related patent as binding in this Court and PAN will have to independently litigate invalidity of the '237 Patent irrespective of how the PTAB rules in the '641 IPR. The case law PAN cites to support its position is inapposite, and none of PAN's cases support the proposition of a stay as to the sole asserted patent when that patent is not in IPR. This factor therefore weighs heavily against a stay.

**PAN Should Not Be Rewarded for Its Delays in this Litigation**

As early as June 28, 2018, BT sought to enforce the '237 and '641 Patents against PAN through its notice letters.  *See* D.I. 1 ("Complaint"), ¶ 19.  BT tried to engage PAN to reach an amicable resolution.  *See* Complaint, ¶ 20.  PAN, however, delayed by indicating it would investigate and follow-up, without actually doing so and even ignoring many of BT's letters altogether.  *See id.*, ¶ 20-24.  PAN finally agreed to engage BT in settlement discussions on February 19, 2022.  After these discussions failed, BT promptly filed its complaint on November 28, 2022.  *See* D.I. 1.  PAN then filed a motion to transfer and motion to dismiss under 35 U.S.C. § 101, causing even further delays in this action.  *See* D.I. 11, 13.  Only after briefing had completed on both motions, did PAN file the IPR petitions, five months after the complaint was filed.

PAN should not benefit from the delay it caused.  As this Court recognized during the case management conference, this case was behind the "normal time frame" based on when the case was filed.  CMC Transcript (Aug. 21, 2023) at 14.  And this delay was largely attributable to the "confluence of time" between the motions filed by PAN.  *Id.; see also* D.I. 11, 13.  Despite PAN's delays in this case, much has transpired.  After this Court decided the motion to transfer and motion to dismiss under 35 U.S.C. § 101, the Court issued its scheduling order and resolved a dispute related to the drafting of the protective order in this case.  *See* D.I. 62, 86.  BT has served its preliminary infringement contentions and produced the licenses covering the patents.  Both parties have served interrogatories and discovery requests and PAN has even served several subpoenas to third parties.  *See, e.g.*, D.I. 94, 99.  Therefore, this factor should weigh in BT's favor given that any delays in the case are attributable to PAN.

**A Stay Would Unduly Prejudice BT**

A stay would unduly prejudice BT, reward PAN for its delay, and give PAN a clear tactical advantage.  For this factor, courts typically examine a number of subfactors, including the (1) timing of the request for review, (2) status of the review proceedings, and (3) relationship of the parties. *Toshiba Samsung Storage*, No. 193 F. Supp. 3d at 350-52.  Here, the late timing of the IPR petition and the status of the review proceedings—denied as to the '237 Patent—strongly favors denying a stay.  While the relationship of parties may slightly favor a stay, it is greatly outweighed by the other subfactors.

*First,* as to the timing of the request, PAN contends it "filed its IPR petitions only months after the filing of the complaint" but, in reality, it waited nearly half a year. Furthermore, as explained more fully above, PAN has been on notice of these patents since 2018 and still waited until after the parties briefed PAN's transfer motion and motion to dismiss to file its IPR petitions.  PAN's conduct makes clear that it is desperate to have this case heard anywhere but here.  This sub-factor weighs against granting the stay.

*Second*, there is no PTAB review proceeding for the '237 Patent.  Accordingly, this factor strongly weighs in BT's favor.  BT would be unduly prejudiced because the PTAB already denied institution on BT's sole remaining asserted patent, which is presumptively valid.  The '641 IPR is not expected to resolve in the PTAB until November 17, 2024—nearly two years after BT originally filed its complaint and six years since BT first began its enforcement efforts against PAN.  Moreover, resolution would likely be even further delayed by appeals before the

Federal Circuit, which BT expects either party would pursue if they did not prevail.[4] This much delay for a case where the sole remaining asserted patent already had its IPR institution denied is unduly prejudicial.

Moreover, a stay pending the '641 IPR would also greatly advantage PAN's defensive strategy. As previously explained, PAN will not be estopped from bringing prior art it could have raised before the PTAB in this Court because the PTAB did not institute an IPR on the '237 Patent. Indeed, PAN will undoubtedly disavow any claim construction decisions made by the PTAB regarding the '641 Patent that it does not find advantageous—effectively granting PAN more opportunities to construe terms than it would normally have before this Court.  The stay would therefore give PAN a clear tactical advantage, which unduly prejudices BT.  This subfactor greatly weighs against granting the stay.

*Third*, the lack of a competitive relationship between the parties and adequacy of monetary damages does not justify the unwarranted delay that PAN seeks.  Though this third subfactor may weigh slightly in favor of a stay, it is heavily outweighed by the prejudice BT would suffer for staying the case pending a patent that has been removed from the case (with prejudice).

A stay would create unwarranted delay (at minimum one additional year, and likely more due to appeals) and give PAN an unfair tactical advantage.  The '237 Patent is presumed valid, and BT should not have to wait years to litigate based on a parallel proceeding relating to a different patent.  The undue prejudice factor weighs heavily against a stay.

\* \* \* \*

In sum, the factors for a stay favor BT.  PAN has not cited any case where the type of stay it is seeking has actually been granted (*i.e.*, staying a case where the PTAB denied institution on the sole asserted patent).  The '237 Patent is presumed valid, and BT has patiently waited for its day it court.  BT's enforcement efforts should not be further delayed by a separate proceeding on a patent it is no longer asserting against PAN.  BT respectfully requests that the Court deny PAN's motion to stay the case with respect to the '237 Patent.

Respectfully,

/s/ Philip A. Rovner

Philip A. Rovner

Enclosure
cc:  Counsel of Record (via E-File)

---

[4] Since 2012, appeals from the PTAB to the Federal Circuit have an average length of over a year until the appellate decision.  *See* Wang Declaration, Ex. 1.  Nearly one-quarter of those appeals are reversed.  *See id.*