

Potter Anderson & Corroon LLP
1313 N. Market Street, 6th Floor
Wilmington, DE 19801-6108
302.984.6000
potteranderson.com

Philip A. Rovner
Partner
Attorney at Law
provner@potteranderson.com
302 984-6140 Direct Phone

May 22, 2024

**VIA E-FILING AND HAND DELIVERY**

The Honorable Christopher J. Burke
J. Caleb Boggs Federal Building
844 N. King Street
Wilmington, DE 19801

        Re:  *British Telecommunications PLC, et al. v. Palo Alto Networks, Inc.*
                 D. Del. C.A. No. 22-1538-CJB

Dear Judge Burke:

Plaintiffs British Telecommunications plc, and BT Americas, Inc. (collectively "BT") submit this response to Defendant Palo Alto Network Inc.'s ("PAN") Motion to Stay Pending *Ex Parte* Reexamination (D.I. 130) ("Motion").

Once again, PAN seeks to gain an improper strategic advantage through another motion for stay. The timing of PAN's request for the *Ex Parte* Reexamination ("EPR") that is the basis of PAN's motion to stay is telling, as PAN waited until the very day after this Court denied its first attempt to stay this case to file its EPR and nearly fifteen months after BT filed its complaint. The Court should not reward such delay tactics.

Previously, PAN sought to stay this action pending resolution of an IPR for a patent that was no longer in the case—U.S. Patent No. 7,895,641 (the "'641 Patent"). *See* D.I. 100. On February 15, 2024, the Court denied PAN's stay motion. *See* D.I. 117. Once PAN realized its previous bid to stay this case had failed, PAN filed its EPR of U.S. Patent No. 7,159,237 (the "'237 Patent") the next day. In the interim, the USPTO denied PAN's rehearing request of the earlier denial of institution of the '237 Patent IPR, with the USPTO finding that "Petitioner's ***obfuscation*** fail[ed] to show why the Board misapprehended claim scope." *See* IPR2023-00888, Paper 12 at 7 (emphasis added) (finding that "Petitioner's argument that the law concerning non-obviousness was 'misapprehended' is merely an attempt to reargue its case, which is not a proper ground for rehearing"). Now—nearly 18 months after the filing of the complaint—PAN seeks to stay this case again. PAN's attempt to gain an inappropriate tactical advantage through a stay will unduly prejudice BT. As discussed below, this Court should deny PAN's motion for a stay because the undue prejudice to BT of a stay heavily tips the scales in favor of BT.

This Court has typically considered three factors when deciding a motion to stay: "(1) whether granting the stay will simplify the issues for trial; (2) the status of the litigation, particularly

whether discovery is complete and a trial date has been set; and (3) whether a stay would cause the non-movant to suffer undue prejudice from any delay, or allow the movant to gain a clear tactical advantage." *Contour IP Holding, LLC v. GoPro, Inc.*, No. 15-CV-1108, 2016 WL 4474340, at *2 (D. Del. July 14, 2016).  The first and second factors weighs slightly against a stay, and the third factor weighs heavily against a stay.

1. **<u>The EPR Is Unlikely To Simplify A Majority of the Issues for Trial</u>**

The simplification of issues factor favors BT or—at worse—is neutral.  *First*, PAN's reliance on EPR statistics ignores that the '237 Patent has already survived two petitions for IPR in addition to PAN's rehearing request regarding the denial of its IPR petition.  *See* IPR2019-01325, Paper 9 (denying institution); IPR2023-00888, Paper 9 (denying institution); IPR2023-00888, Paper 12 (denying rehearing request).  Indeed, the '237 Patent is differently situated than most patents and the generic statistics that PAN relies on do not account for the objectively demonstrable strength of the '237 Patent.  Moreover, given that estoppel would have barred PAN from asserting any other prior art patents it did not raise in the IPR, it is appropriate to conclude that the prior art PAN asserted in the IPR, which the USPTO rejected, is stronger than the prior art it raised in the EPR.  PAN's EPR statistics also do not account for this fact.  Regardless, even based on PAN's generic statistics this factor would still likely be neutral.  *See, e.g., Ever Win Int'l Corp. v. RadioShack Corp.*, 902 F. Supp. 2d 503, 506-07 (D. Del. 2012) (finding this factor neutral despite roughly 75% of EPR requests resulting in cancellation or modification of a claim).  But given the strength of the '237 Patent and the weakness of PAN's EPR prior art, this factor should weigh <u>against</u> a stay.

*Second*, contrary to PAN's assertion, the *Ever Win* court did <u>not</u> find "that this factor weighs in favor of a stay."  *See* D.I. 131 ("Mot.") at 1 (citing *Ever Win*).  Rather, under similar facts as here, the *Ever Win* court found "this factor to be neutral."  902 F. Supp. 2d at 506-07.  Indeed, like in *Ever Win*, PAN also asserts invalidity under both Sections 101 and 112, which will not addressed by the EPR.  *See id.; see also* Ex. 1 (PAN's supplemental invalidity contentions).  Likewise, EPRs also do not address issues of infringement or damages.  Hence, "if some or all of the claims emerge from reexamination, a not insignificant portion of the case will remain unilluminated by the PTO's review."  *Ever Win*, 902 F. Supp. 2d at 507.  Thus, contrary to what PAN argues, this Court consistently finds this factor neutral where "the issues left for trial do not completely overlap those that are to be resolved upon reexamination."  *See id.* (quoting *Vehicle IP, LLC v. Wal-Mart Stores, Inc.*, No. 10-CV-503, 2010 WL 4823393, at *2 (D. Del. Nov. 22, 2010)); *see also Mission Abstract Data L.L.C. v. Beasly Broad. Grp., Inc.*, No. 11-CV-176, 2011 WL 5523315, at *2-3 (D. Del. Nov. 14, 2011); *Cooper Notification, Inc. v. Twitter, Inc.*, No. 09-CV-865, 2010 WL 5149351, at *2-3 (D. Del. Dec. 13, 2010).  But given the relative strength of the '237 Patent, which was not present in these other cases, this factor should, again, ultimately weigh <u>against</u> a stay.

*Third*, PAN cites multiple cases that discuss this factor in the context of an IPR rather than an EPR.  But unlike an IPR, PAN is not estopped from re-raising any of the same 102 and 103 invalidity issues raised in the EPR.  Moreover, the EPR uses a comparatively lower threshold for granting the EPR as compared to instituting an IPR.  *Compare*, 35 U.S.C. § 304 (requiring "a substantial new question of patentability" for EPRs), *with*, 35 U.S.C. § 314(a) ("reasonable

likelihood that the petitioner would prevail" for IPRs).  Given these differences, the potential simplification in an EPR is far less than an IPR.  Therefore, the IPR-related cases cited by PAN for this factor are inapposite.  *See Contour IP Holding*, 2016 WL 4474340, at *3 (finding simplification factor favored a stay "in light of the fact that estoppel will apply"); *Speyside Med., LLC v. Medtronic Corevalve LLC*, No. 20-CV-361, D.I. 155 (D. Del. Sept. 30, 2021) (finding that "efficiencies will be gained (via estoppel…)"); *360Heros, Inc. v. GoPro, Inc.*, No. 17-CV-1302, D.I. 132 (D. Del. June 5, 2019).

*Fourth*, PAN's reliance on *Satius Holdings, Inc. v. Samsung Electronics Co.* is misplaced as the facts of that case are inapposite.  No. 18-cv-00850, D.I. 86 (D. Del. Dec.11, 2019).  Unlike in *Satius*, this Court is unlikely to "benefit [from] the PTO's views on the prior art" should BT prevail.  *See id.*(noting "a key invalidity issue in the case" would be considered in the EPR).  PAN's EPR only includes two of the eight different combinations from PAN's invalidity contentions asserted in the case pending before this Court.[1]  *Compare*, Ex. 1 (PAN's supplemental invalidity contentions), *with*, D.I. 131, Ex. 2.  And PAN has yet to narrow its contentions by removing two prior art combinations.  *See* D.I. 64 (agreeing to narrow from six combinations per claim down to four combinations per claim).  In other words, should BT prevail in the EPR, PAN can just exclude those same two combinations that were already considered by the PTO from its contentions—rendering the PTO's views on such prior art wholly useless to this Court's consideration of invalidity in this case.  Likewise, the references in the remaining combinations of the EPR are not being asserted by PAN in its invalidity contentions.  Thus, any insight on those references would also provide no benefit to this case.  Accordingly, unlike in *Satius*, there is no such "benefit" to be had should BT prevail in the EPR. *Cf. Satius*, D.I. 86.  This factor necessarily weighs less in favor of a stay here than it did in *Satius*, where the Court found the factor to only "<u>slightly</u> favor a stay." *Id*. (emphasis added).  Moreover, given the relative strength of the '237 Patent, which was also not present in *Satius*, this factor should weigh against a stay.

In sum, even in the unlikely event the EPR results in simplification for certain claims, a large remainder of the case would remain unaffected—with no benefit to be had.  At worse, this factor is neutral, "[i]n light of these competing considerations."  *See Ever Win*, 902 F. Supp. 2d at 507; *see also Vehicle IP*, 2010 WL 4823393, at *2; *Mission Abstract*, 2011 WL 5523315, at *2-3; *Cooper Notification*, 2010 WL 5149351, at *2-3.  But given the relative strength of the '237 Patent, which sets this case apart, this Court should find that this factor weighs against a stay.

### 2. <u>PAN Should Not Be Rewarded for Its Delays in this Litigation</u>

This factor also favors denying a stay because PAN should not be permitted to benefit from the delay it caused.  This Court recognized during the case management conference that this case was behind the "normal time frame" based on when the case was filed.  CMC Transcript (Aug. 21, 2023) at 14.  And this delay was largely attributable to the "confluence of time" between the motions filed by PAN. *Id.; see also* D.I. 11 (motion to dismiss under 35 U.S.C. § 101), 13 (motion to transfer).  Despite PAN's delays, a significant amount of work has been put into this

---

[1] PAN is limited to six combinations per claim but asserts a total of eight different combinations across all the claims.

The Honorable Christopher J. Burke
May 22, 2024
Page 4

case. After this Court decided the motion to transfer and motion to dismiss under 35 U.S.C. § 101, the Court issued its scheduling order and resolved a dispute related to the drafting of the protective order in this case. *See* D.I. 62, 86. Both Parties have since exchanged their initial contentions and briefing on claim construction is largely complete.[2] Likewise, document discovery is nearing completion and is presently set to end in a little over a month. *See* D.I. 62., at ¶ 7.b. But for PAN's delays, this case would likely be even further along. This factor should therefore weigh in BT's favor given that any delays are attributable solely to PAN's delay.

### 3. A Stay Would Unduly Prejudice BT

A stay would unduly prejudice BT, who seeks—as the plaintiff—a prompt resolution of the case. Likewise, it would reward PAN's improper strategy of waiting well over a year to file its EPR to gain an inappropriate tactical advantage. This Court has recognized that a "request for reexamination made well after the onset of litigation followed by a subsequent request to stay may lead to an inference that the moving party is seeking an *inappropriate* tactical advantage." *SenoRx, Inc. v. Hologic, Inc.*, No. 12-CV-173, 2013 WL 144255, at *6 (D. Del. Jan. 11, 2013) (emphasis in original) (citation omitted). Indeed, PAN's strategy is transparent—do everything it can to avoid litigating this case for as long as possible while taking multiple shots at invalidity in different fora. Little wonder the USPTO found PAN guilty of engaging in "obfuscation" when it rejected PAN's motion for IPR reconsideration. IPR2023-00888, Paper 12 at 7. This factor therefore weighs heavily against a stay.

*First*, not only did PAN wait nearly 15 months from the filing of the Complaint to request the EPR, but more egregiously, PAN also waited after the Court had denied its previous motion to stay before requesting the EPR. Indeed, PAN submitted its request for EPR the day after its previous motion to stay was denied. Compare, D.I. 117 (denying stay on February 15, 2024), *with*, D.I. 131, Ex. 2 (requesting EPR on February 16, 2024). This timing and sequence of events is telling and further supports the inference that PAN seeks an "*inappropriate* tactical advantage." *See id.* (emphasis in original). PAN's goal is to cause undue delay and to drag this case out in the district court for as long as possible. This is improper and unduly prejudices BT.

Notably, PAN tries to argue that "BT cannot complain of any prejudice given its substantial delay in filing its complaint," but cites no law in support. *See* Mot. at 2-3. Rather, PAN only cites to discussions from cases considering the relationship of the parties. *See* Mot. at 3 (citing *Princeton Digit. Image Corp. v. Konami Digit. Ent. Inc*, No. 12-CV-1461, 2014 WL 3819458, at *6 (D. Del. Jan. 15, 2014); *ImmerVision, Inc. v. Apple Inc.*, No. 21-CV-01484, D.I. 159 (D. Del. Oct. 17, 2023)). But the mere absence of prejudice resulting from the relationship of the parties does not minimize the prejudice BT would nevertheless face from PAN's *undue* delay and gamesmanship.

Regardless, any delay in filing the complaint was also caused by PAN itself. Indeed, BT sought to resolve its infringement claim against PAN as early as June 28, 2018. *See* D.I. 1 ("Complaint"), ¶ 19. However, PAN delayed by indicating it would investigate and follow-up without actually doing so. *See id.*, ¶¶ 20-24. PAN then proceeded to ignore many of BT's

---

[2] PAN's sur-reply is to be served on BT on the same date as this response. All that is left is to assemble and file the joint brief.

follow-up letters.  *See id.*  Although PAN finally agreed to engage BT in settlement discussions on February 19, 2022, those discussions eventually failed.  Thereafter, BT promptly filed its complaint on November 28, 2022.  *See* D.I. 1.  Accordingly, PAN's overall strategy of continual delay is not new to this case.  Rather, it has been core to PAN's strategy from the beginning and any further delay would unduly prejudice BT.

*Second*, PAN has already taken three bites at the apple with respect to invalidity: once when it petitioned for IPR of the '237 Patent, again when it requested rehearing for the denial of its IPR petition, and a third time when it requested a <u>subsequent</u> EPR.  Notably, after PAN's petition for IPR of the '237 Patent was denied, and after its expert fared poorly in deposition for the '641 Patent's IPR[3], PAN completely changed its invalidity contentions.  *See* D.I. 116.  This is precisely the type of gamesmanship of which PAN seeks to take advantage.

Indeed, the stay would allow PAN to unfairly adjust its position *again* after another potentially failed attempt at invalidating the '237 Patent.  It is no coincidence that the EPR happens to overlap with PAN's invalidity contentions on exactly two prior art combinations.  *Compare*, Ex. 1 (PAN's supplemental invalidity contentions), *with*, D.I. 131, Ex. 2 (PAN's EPR request).  Because PAN is required to reduce its asserted combinations of prior art by exactly two combinations anyways (*see* D.I. 64), PAN can now effectively assert <u>all</u> of the prior art combinations that it identified (four in this action and two in the EPR), without truly narrowing its contentions (*see* Ex. 1 (PAN's supplemental invalidity contentions)).  And, as discussed above, PAN already changed its contentions once after failing in the IPR setting (*see* Ex. 2 (PAN's initial invalidity contentions)).  PAN is therefore attempting to circumvent the parties' prior agreement submitted to the Court (D.I. 64) by asserting far more combinations of prior art against BT than PAN would normally have been permitted to assert.

For the foregoing reasons, this factor weighs heavily against a stay.

\* \* \* \*

In sum, the factors for deciding whether to stay favor BT.  PAN has already made multiple attempts at delaying BT's enforcement efforts and BT has patiently waited for its day in court.  BT respectfully requests that the Court deny PAN's motion to stay this case.

Respectfully,

*/s/ Philip A. Rovner*

Philip A. Rovner (#3215)

PAR/mas/11519579
Enclosure
cc:  Counsel of Record (via E-File)

---

[3] PAN relied on the same expert, who submitted substantially identical declarations for both the '237 and '641 IPRs.